## IN RE APPEAL OF JACQUELYN KINDIS ET AL.

HOUSE, C. J., THIM, RYAN, SHAPIRO and LOISELLE, Js.

Argued January 5—decided January 19, 1972

*Steven P. Floman,* for Sylvia Kindis.

*Frank J. Kinney, Jr.,* for Jacquelyn and Jordan Kindis, minor children.

*Thomas K. Ellsworth,* assistant attorney general, with whom, on the brief, were *Robert K. Killian,* attorney general, and *Michael A. Arcari,* assistant attorney general, for the state.

HOUSE, C. J. This is an appeal from a judgment of the Superior Court dismissing an appeal from a decision of the Juvenile Court which denied the appellant's petitions for the revocation of orders of the Juvenile Court for the commitment of two children of the appellant on a finding that they were uncared for and neglected. It involves the operation of the law in that delicate and difficult area which concerns the natural rights of parents with respect to their children and the prerogative powers of the state in the exercise of some sort of safeguards and some measure of fostering care for neglected and uncared-for children. The authority of the state and the exercise of its jurisdiction is well established in the common law with a full understanding that "[t]aking children from their parents is, when possible, to be avoided; on the other hand, parental obligations are to be enforced." *Cinque* v. *Boyd,* 99 Conn. 70, 82, 121 A. 678.

In 1963, by orders of the Juvenile Court, the children were taken from their natural parents as uncared for and neglected children and committed to the commissioner of welfare for placement in a foster home where they are now living. Their mother, the petitioner, in 1969 filed with the Juvenile Court petitions seeking the revocation of the orders.

The petitions were denied by the Juvenile Court and the appeal to the Superior Court followed. As provided by § 17-70 of the General Statutes, the Superior Court heard the appeal on the record of the proceedings in the Juvenile Court. Under § 17-70 the Superior Court is charged with the duty to "review the record so certified of the proceedings in the juvenile court and determine whether or not the court has found facts without evidence or has reached conclusions which cannot be reasonably derived from the facts found or the law applicable thereto or both, or has acted illegally or arbitrarily."

From the record before it and after hearing the interested parties, the Superior Court found that the Juvenile Court was legally correct in applying the "best interests of the children" standard, that there was evidence before the Juvenile Court on which it could, applying that standard, deny the petitions without abusing its discretion and that it did not act arbitrarily. Since these conclusions were dispositive of the issues raised by the petitioner, the Superior Court dismissed the appeal.

In the appeal to this court, the petitioner claims that both the Juvenile Court and the Superior Court erred in applying the standard of what was in the best interests of the children. She relies on the language of § 17-62 (f) of the General Statutes which provides that any court which has committed a neglected or uncared-for child "may, upon the application of a parent . . . upon finding that cause for commitment no longer exists, revoke such commitment." It is her claim that, as used in this statute, the word "may" should be construed in the sense of "shall" and that the only test to be applied by the court is whether "cause for commitment no longer exists."

We cannot agree with the validity of this contention. The obvious absurdity of such an interpretation lies in the fact that a neglected and uncared for child ceases to be neglected and uncared for once he is placed in a foster home where, presumably, he will be given the care and attention he deserves. The petitioner's reasoning is circuitous since her analysis dictates a finding that the cause for commitment no longer exists once the commitment order is complied with and the child is cared for by foster parents. If we were to accept this tautology as the single test prescribed by the legislature, the courts of this state would be forced to treat the child as a yo-yo to be tossed back and forth without regard to the circumstances or the child's best interests. We cannot, in good conscience, ascribe such a meaningless intention to an act of the legislature. The Superior Court did not hold that the "best interest" standard was the *sole* test to be applied to the exclusion of a finding that cause for commitment no longer exists. What it did hold was that the Juvenile Court was legally correct in applying that standard in making its decision as to whether a cause for commitment still exists and whether the petitions for revocation should be granted.

We have consistently held in matters involving child custody that while the rights, wishes and desires of the parents must be considered it is nevertheless the ultimate welfare of the child which must control the decision of the court. As this court quoted with approval from 46 Corpus Juris, 1235, in *Mullins* v. *Becker,* 113 Conn. 526, 530, 155 A. 705: " 'It is well established as a general rule that the welfare and best interests of the child are controlling elements in the determination of all disputes as to the custody; and the statutes recognizing a right to

the custody of the child in either the father or mother must stand aside where the recognition of such a right would materially interfere with the paramount right of the child to have its welfare considered and conserved by the court. The welfare of the child under the above rule may require that its custody be denied the parent and awarded to others.'" In the case of *In re Appeal of Dattilo,* 136 Conn. 488, 495, 72 A.2d 50, this court said: "We cannot find that the trial court was in error in concluding that the revocation of the commitments would not conduce to the best welfare of the children; and the appellant, as their mother, has no natural right to their custody which can prevail over such a disposition of the case as would serve their best interests." We noted in *Bailey* v. *Mars,* 138 Conn. 593, 600, 87 A.2d 388, that the legislation relating to the Juvenile Court was one of many instances "indicative of a primary concern on the part of the legislature for the welfare of minor children." We also said there: "This legislative consistency is in accord with the principles of our common law. We have repeatedly held in actions for the custody of a child that his welfare must be the controlling consideration. *Claffey* v. *Claffey,* 135 Conn. 374, 377, 64 A.2d 540; *Hunt* v. *Hunt,* 116 Conn. 701, 702, 163 A. 608. We have pointed out that this principle is determinative even at the expense of depriving a parent of custody. *Don* v. *Frankel,* 136 Conn. 411, 413, 71 A.2d 713; *Goshkarian's Appeal,* 110 Conn. 463, 468, 148 A. 379; *Kelsey* v. *Green,* 69 Conn. 291, 298, 37 A. 679."

In fact, the "best interest of the child" standard is implicitly incorporated into the commitment statute (General Statutes § 17-68) which authorizes the Juvenile Court to commit the custody of a child to another "if it finds that the child needs the care,

discipline or protection of the state." It was pursuant to this statutory authority that the original commitment was made and, even under the limited construction of § 17-62 (f) for which the petitioner contends, the "cause for commitment" continues to exist so long as the child "needs the care, discipline or protection of the state."

On the hearing of the petitions for the revocation of the orders for the commitment of these two children, the Juvenile Court expressly found that "cause for commitment of these children still exists." The Superior Court on appeal heard the parties, reviewed the record, found no error and dismissed the appeal. We have fully considered the petitioner's assignments of error and the circumstances disclosed in the record, which are unnecessary to recite. The record discloses that the Juvenile Court fully considered all relevant circumstances including those which caused the original commitment and those which presently prevailed in the parental home. It suffices to state that we find no error of law and that the record fully supports the judgment of the Superior Court dismissing the appeal from the Juvenile Court.

There is no error.

In this opinion the other judges concurred.