Robert Dubicki *v.* Genia M. Dubicki

Peters, Healey, Parskey, Armentano and Shea, Js.

Argued January 14—decision released April 20, 1982

*Bruce Morris,* with whom, on the brief, was *Richard M. Corr,* for the appellant (plaintiff).

*Timothy Sheehan,* with whom, on the brief, was *Charles M. Rosenzweig,* for the appellee (defendant).

Armentano, J. This appeal raises the propriety of orders incident to a decree dissolving a marriage that awarded to the defendant the plaintiff's interest in jointly held marital property and custody of their minor child.

The twenty-three year marriage of the parties was dissolved by a decree entered May 22, 1979, upon an undisputed finding of irretrievable break-

down. After nineteen years of the marriage, the defendant ejected the plaintiff from the family home because she could no longer tolerate his beatings of her and of their children, his heavy drinking, and their constant quarreling. During the last four years of the marriage the defendant never requested the plaintiff to return; nor did the plaintiff return or provide support for the defendant or their two minor children. At the time of trial, their sole minor child was fifteen years of age. She will reach her majority on November 24, 1982.

During the first seventeen years of the marriage the plaintiff was steadily employed in corporate administration. In 1973, the plaintiff was unemployed for three months, during which period he underwent aural surgery. He subsequently was employed for one year by a corporation which he had formed with three other investors. The plaintiff was unemployed from June, 1974 to December, 1978, except for approximately three months in 1975. In December, 1978, the plaintiff began employment as a controller and personnel manager, for which he earns $200 gross compensation per week.

The defendant worked part time as a substitute teacher, babysitter and "girl Friday" intermittently throughout the marriage. At the time of trial the defendant was employed as a full-time teacher, for which she earns $300 gross compensation per week.

At the time of trial the parties jointly owned three parcels of residential property. The family residence in which the defendant resides with their three children, is located at 76 Flanders Street, Southington. The parties made estimates of $65,000

and $40,000 as the equity value of this property. The parties purchased the property one year after their marriage, by making a down payment with a $2000 gift from the defendant's mother, and by assuming the builder's $1000 note. No outstanding mortgage existed at the time of trial.

In 1962, the defendant's mother conveyed to the parties a one-half interest in a lot located at 55 Lyman Street and 125 Gold Street in New Britain, subject to a life use in the mother. Subsequent to the transfer, the defendant's sister, to whom had been conveyed the other one-half interest, transferred that interest to the parties for $10,000. Located at 125 Gold Street is a single family dwelling in which the defendant's mother resided and would continue to reside for life pursuant to the terms of the conveyance. At 55 Lyman Street is a six-family brick house. At the time of trial the parties made estimates of $96,000 and $47,000 as the equity value of the property. The defendant testified that the lot cannot be subdivided. She estimates the annual rental income from the apartment house, less expenses, at $500. Before their separation the defendant managed the finances of the property, while the plaintiff performed the renovation and maintenance work. After the plaintiff left the family home the defendant entirely managed the rental property and retained the income therefrom.

The parties mortgaged the New Britain property in 1967, and used $14,000 of the proceeds to purchase residential property on Lake Hayward in East Haddam. The plaintiff renovated and performed the general maintenance work on the summer home. The parties estimated the equity value of this property at $40,000 and $23,500.

In the dissolution action each party sought custody of the minor child, child support and conveyance of the other's interest in their jointly held real property. No pendente lite custody or support orders were sought. After a trial to the court, the defendant was awarded custody of the minor child with rights of reasonable visitation to the plaintiff. The plaintiff was ordered to convey to the defendant his interest in all the real property owned jointly by the parties. The court ordered the defendant to execute a noninterest-bearing promissory note in the amount of $21,000, secured by a mortgage on the Southington property in favor of the plaintiff. The principal amount of the note represented the plaintiff's interest in that property, less the amount the court determined that the plaintiff owed for child support from May 25, 1975, the date he was ejected from the family residence, to the date of judgment at the monthly rate of $100 per child.[1] The note was ordered payable on the minor daughter's eighteenth birthday, marriage or death, whichever event occurred first. From the date of judgment until the note became payable, the principal amount was to be decreased at the rate of $100 per month, representing child support.

The trial court also awarded the plaintiff the proceeds in the approximate amount of $11,800 of a loan the parties had made to the corporation he had invested in and worked for in 1973-74. The loan is payable in October, 1982. While unem-

---

[1] The defendant was awarded a credit of $4200 for the support of the son of the parties from May 25, 1975, to November 28, 1978, his eighteenth birthday. The defendant was further awarded a credit of $4800 for the support of their minor daughter from May 25, 1975, to the date of judgment. Another daughter had reached her majority before the separation.

ployed after the parties separated, the plaintiff had lived on the $120 per month interest from that note.

In this appeal from the judgment dissolving the marriage, the plaintiff claims that the trial court abused its discretion (1) in dividing the assets of the parties by unreasonably punishing the plaintiff and in finding that the acquisition of New Britain and Lake Hayward properties resulted from the contribution of the defendant's mother; and (2) in awarding custody to the defendant without considering the best interests and the wishes of the child.

"As has been repeatedly stated by this court, judicial review of a trial court's exercise of its broad discretion is limited to the questions of whether the court correctly applied the law and could reasonably have concluded as it did. E.g., *Smith* v. *Smith,* 185 Conn. 491, 494, 441 A.2d 140 (1981); *Basile* v. *Basile,* 185 Conn. 141, 144, 440 A.2d 876 (1981); *McGuinness* v. *McGuinness,* 185 Conn. 7, 13, 440 A.2d 804 (1981)." *Beede* v. *Beede,* 186 Conn. 191, 194–95, 440 A.2d 283 (1982); see, e.g., *McPhee* v. *McPhee,* 186 Conn. 167, 177, 440 A.2d 274 (1982). The weight given the evidence before it is within the sole province of the trial court. E.g., *Beede* v. *Beede,* supra, 195; *Smith* v. *Smith,* supra, 493.

The requisite factors for the trial court's determination of marital property division depend upon whether it is considered as lump sum alimony pursuant to General Statutes § 46b-82, or as a property

assignment pursuant to General Statutes § 46b-81.[2]
Under the provisions of both statutes the trial court
" 'shall consider the length of the marriage, the
causes for the . . . dissolution of the marriage, . . .
the age, health, station, occupation, amount and
sources of income, vocational skills, employability,
estate' and needs of each of the parties. General
Statutes §§ 46b-81 (c), 46b-82." *McPhee* v. *McPhee,*
supra, 171. In assigning marital property, however,
"the trial court must also consider the liabilities of
the parties, 'the opportunity of each for future
acquisition of capital assets and income . . . [and]

---

[2] Although an award of property is usually considered by trial
courts and this court as a property assignment pursuant to General
Statutes § 46b-81, as distinguished from periodic or lump sum ali-
mony in the form of money pursuant to § 46b-82; see, e.g., *Kroop*
v. *Kroop,* 186 Conn. 211, 215–16, 440 A.2d 293 (1982); *El Idrissi*
v. *El Idrissi,* 173 Conn. 295, 297, 377 A.2d 330 (1977); *Ross* v.
*Ross,* 172 Conn. 269, 273, 374 A.2d 185 (1977); *Pasquariello* v.
*Pasquariello,* 168 Conn. 579, 582, 362 A.2d 835 (1975); this court
has never held that alimony based upon a continuing duty to support
could not consist of an award of property. See *Hodge* v. *Hodge,*
178 Conn. 308, 315–16, 422 A.2d 280 (1979); *McKay* v. *McKay,*
174 Conn. 1, 2–3, 381 A.2d 527 (1977); *Sanchione* v. *Sanchione,* 173
Conn. 397, 404 n.2, 378 A.2d 522 (1977); *Viglione* v. *Viglione,* 171
Conn. 213, 215, 368 A.2d 202 (1976); *Wood* v. *Wood,* 165 Conn.
777, 782, 784n, 345 A.2d 5 (1974); *Tobey* v. *Tobey,* 165 Conn. 742,
743, 748n, 345 A.2d 21 (1974).

We have often distinguished between the assignment of property
under § 46b-81 and alimony under § 46b-82. See, e.g., *Beede* v.
*Beede,* 186 Conn. 191, 192, 440 A.2d 283 (1982); *McPhee* v. *McPhee,*
186 Conn. 167, 168, 440 A.2d 274 (1982); *Basile* v. *Basile,* 185
Conn. 141, 142–43, 440 A.2d 876 (1981); *Gallo* v. *Gallo,* 184 Conn.
36, 49–50, 440 A.2d 782 (1981). The difference between an
assignment of a specific portion of an estate and alimony is in
their purposes. Clark, Domestic Relations (1968) § 14.8. The pur-
pose of property assignment is equitably to divide the ownership of
the parties' property. *McPhee* v. *McPhee,* supra, 170. On the
other hand, periodic and lump sum alimony is based primarily upon
a continuing duty to support. *Hotkowski* v. *Hotkowski,* 165 Conn.
167, 170, 328 A.2d 674 (1973); see *Smith* v. *Smith,* 185 Conn. 491,
493, 441 A.2d 140 (1981); *Wood* v. *Wood,* supra, 784; 2 Nelson,
Divorce and Annulment (2d Ed.) § 14.06.

the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.' General Statutes § 46b-81 (c)." *McPhee* v. *McPhee,* supra, 171; see, e.g., *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 583, 362 A.2d 835 (1975).

Although the parties requested alimony in the pleadings, they testified at trial that they did not seek alimony. In its memorandum of decision, the trial court characterized the transfers of the plaintiff's property interests to the defendant as lump sum alimony. In its rectification of the record,[3] however, the trial court characterized the transfers as property distribution. The characterization which is later in time should control, and is more consistent with the trial court's actions, and with the parties' testimony. Moreover, the fact that the plaintiff received a mortgage note as his share of the Southington property transferred to the defendant by the decree indicates that the division of property did not represent lump sum alimony based upon a duty to support. Accordingly, we will consider the award dividing the marital property as a property assignment governed by General Statutes § 46b-81.

The trial court expressly found all the issues for the defendant. The trial court found specifically that the dissolution of the marriage was caused by the heavy drinking of the plaintiff, his failure to work for substantial periods of time, his failure to support his wife and children at least during the

---

[3] Upon order of this court dated November 6, 1979, the trial court filed a rectification of the record on February 22, 1980. The plaintiff had requested the trial court to rectify its memorandum of decision by elaborating upon the factual basis of its judgment. See Practice Book §§ 3082, 3108.

four years of separation, and his failure to assist in the preservation of the jointly owned real property during that period.[4] This finding is a proper consideration in making a property assignment and is amply supported by the record. Nothing in the record supports the plaintiff's claim that the trial court acted to punish the plaintiff, rather than to divide equitably the assets of the parties based upon all the facts and circumstances.

The court further found that the New Britain and Lake Hayward properties "came to be owned by the parties as a direct result of a gift from the defendant's mother and from monies borrowed using the gift as security." The plaintiff claims that this finding is unreasonable because one-half of the New Britain property was purchased from the defendant's sister. The sister, however, also acquired her interest from the mother and soon thereafter transferred it to the parties. Accordingly, the finding is reasonably supported by the evidence.

Other than these findings of the causes for the dissolution of the marriage and the partial finding of the acquisition and preservation of the marital property, the trial court made no other express findings concerning the criteria specified in General Statutes § 46b-81. The trial court was not obligated to make express findings on each of the statutory considerations. *Posada* v. *Posada,* 179 Conn. 568, 573, 427 A.2d 406 (1980) ; see *Krause* v. *Krause,* 174

---

[4] The defendant concedes that there is no factual basis for the trial court's finding that the plaintiff "on one occasion while in the family car struck his wife with his fists and knocked her out of the car." This error, however, is harmless because the incident was cited as only an example of the plaintiff's physical abuse, which abuse was amply supported by the record.

Conn. 361, 364, 387 A.2d 548 (1978). From our review of the record, this court is satisfied that the trial court reasonably and equitably divided the marital assets based upon the requisite considerations.

The plaintiff also claims error in the trial court's awarding custody of the minor child of the parties to the defendant without expressly finding that the award was in the best interests of the child and without determining the wishes of the child. General Statutes § 46b-56 (b), as amended to the date of judgment[5] provides: "In making . . . any order with respect to custody or visitation, the court shall be guided by the best interests of the child, giving consideration to the wishes of the child if he is of sufficient age and capable of forming an intelligent preference, provided in making the initial order the court may take into consideration the causes for dissolution of the marriage or legal separation."

Our review of child custody awards is limited to deciding "whether the court abused its broad discretion to award custody based upon the best interests of the child as reasonably supported by the evidence." *Hall* v. *Hall,* 186 Conn. 118, 123–24, 439 A.2d 447 (1982); see General Statutes § 46b-56. The trial court expressly found that the plaintiff was not entitled to custody because he had failed to support her for at least four years and because he was unfit due to his irresponsibility, drinking and physical abuse of the defendant. These findings are reasonable and support an award of custody to the defendant based upon the best interests of the child and regardless of the child's wishes which are

[5] Section 1 of Public Acts 1981, No. 81-402 added "if such causes are relevant in a determination of the best interests of the child" to General Statutes § 46b-56 (b).

not apparent in the record. Although desirable, it was not necessary for the court expressly to find the best interests of the child; that finding is implicit in the award which was consistent with the recommendation of the family relations officer assigned to the case.[6] On the basis of a review of the record in this appeal, we are satisfied that the trial court properly awarded custody of the minor child to the defendant.

There is no error.

In this opinion the other judges concurred.

---

[6] The report of the family relations officer was not offered into evidence and is not a part of the record; nor did he testify at trial. The plaintiff testified, however, that the officer recommended that the child remain in the custody of the defendant.