[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING RE: PETITION FOR REVOCATION OF ORDER OF COMMITMENT
On October 10, 1989, the captioned child was adjudicated uncared for/specialized needs; following adjudication, and effective January 19, 1990 (date of placement), the child was committed to the Department of Children and Youth Services (DCYS) for a period not to exceed eighteen months.[1] On June 10, 1991, the commitment was extended, effective July 19, 1991, to January 19, 1993.[2]
On or about August 21, 1991, Paul G. was adjudicated a delinquent child in connection with Fourth Degree Sexual Assault charges; on September 24, 1991, he was committed to DCYS as a delinquent child for a period of two years to September 24, 1993.[3] On March 12, 1992, Paul G. was placed (from Long Lane) at the High Plains Youth Center, Rebound Corrections Program (Rebound), Denver, Colorado. Rebound is a highly structured, secure, residential treatment program intended for the treatment of youthful sex offenders and arsonists; the child has remained at Rebound to date, and it is anticipated he will be at that facility for, at the very least, several more months.
DCYS has moved to revoke the uncared/for commitment arguing that the Regional Office is providing no services to the child at this time and that his needs are being, and will be, fully addressed under the delinquency commitment; thus, CT Page 7310 the agency contends there is no need for the dual commitments.[4] The instant petition was filed on January 17, 1992, before Paul G. was placed out of state at Rebound, and alleges as the basis for revocation, the following: "On November 15, 1991, Paul was discharged from placement . . . [and] was placed at Long Lane and is currently receiving services from said facility [;] [a]t this time there are no immediate plans to seek therapeutic placement for child . . . DCYS Regional Office is not providing any services to child . . . [and] Long Lane is equipped to meet the child's needs upon discharge through aftercare services."
Both respondent/mother and the child's attorney oppose revocation of the uncared/for commitment. They argue that the reason or ground for the uncared/for commitment still exists in that the child continues to have specialized needs which cannot be addressed in the mother's home, and, that even following completion of the Rebound program, and/or the expiration of the delinquency commitment, the child may well continue to require additional services relative to returning home and/or in preparation for eventual independent living. The mother and the child's attorney also contend that with the uncared/for commitment in place, funding for the continuation of the Rebound program, and/or other appropriate services, would be reasonably assured.[5] Therefore, those parties opposing the instant motion assert that cause for the uncared/for commitment continues to exist, and/or, that revocation of the said commitment would not further the best interests of the child.
General Statutes Section 46b-129 (g) provides, in pertinent part, as follows: "Any court by which a child . . . has been committed . . . may, upon the application of . . . [the] commissioner . . . upon finding that cause for commitment no longer exists, revoke such commitment . . . The court may further revoke the commitment . . . upon application by the commissioner . . . upon a finding that such revocation will be for the best interest and welfare of such child or youth." The Connecticut Supreme Court has stated that "the burden is clearly upon the person applying for the revocation of commitment to allege and prove that cause for the commitment no longer exists." In Re Juvenile Appeal (Anonymous),177 Conn. 648, 659 (1979). Upon establishment of that fact, the inquiry then becomes whether a continuation of the commitment will nevertheless serve the child's best interests. In Re Juvenile Appeal (Anonymous), supra; In Re Thomas L., 4 Conn. App. 56, 57 (1985); In Re Juvenile Appeal (85-1), 3 Conn. App. 158, 160 (1985). Regarding a revocation of commitment, the Supreme Court has held that "it is . . . the ultimate welfare of the child which must CT Page 7311 control the decision of the court." In re Appeal of Kindis,162 Conn. 239, 242 (1972)
Paul G. is a fifteen-year old special needs adolescent child who has been the recipient of DCYS services for the past eleven years; since the date of the uncared/for commitment, he has been in multiple placements due to "progressive-oppositional and atypical" behavior. Because of the sexual offenses and fire-setting incidents, the child is particularly difficult to place residentially. In March, Paul G.'s options were to remain at Long Lane or to be admitted to the therapeutic facility at Rebound; he voluntarily agreed to enter Rebound. A Rebound report dated May 26, 1992 (covering a period to May 12, 1992) details intensified, individual work with the child by Rebound staff, but reflects exceedingly slow progress.[6] It is generally agreed that Paul G. should remain at Rebound until the professionals there feel he can be appropriately placed in a less-restrictive setting. The average period of residency at Rebound, according to the somewhat limited evidence presented, would appear to be around twelve to eighteen months; however, the program apparently can run up to, and beyond, twenty-four months. The ultimate plan for Paul is his eventual return to his mother's home, or to have him prepared to assume normal, independent community living. The mother testified that she loves the child, but recognizes that he is very much in need of intensive, long-term professional attention; she is willing to have the child return home upon completion of the Rebound program and upon the recommendation of the facility's staff that her son may be safely and appropriately returned to the home and the community.[7] Support and transitional services may well be needed at that time in order to achieve the set goals. Apparently Paul cannot be kept at Rebound against his wishes; if he is expelled from Rebound for misconduct, etc.; or voluntarily withdraws from the program, he would be returned to Long Lane.
The evidence indicated that without the uncared/for commitment, DCYS would no longer be required to fund the child's participation in the Rebound program if the child remained in Colorado beyond the expiration date of the delinquency commitment (September 24, 1993). However, there could be an extension of a few months, at the discretion of the Commissioner, apparently on the request of the child in conjunction with the parole services office.[8] Another option if continued funding was needed beyond the duration of the delinquency commitment would be a voluntary commitment of the child to DCYS by the mother. And, if funding was required after expiration of the CT Page 7312 delinquency commitment, and the uncared/for commitment had been revoked prior thereto, the department could simply refile based on the child's specialized needs.
Paul G. entered Rebound on or about March 12, 1992; the delinquency commitment will expire September 24, 1993. At the expiration of the delinquency commitment, the child will have had approximately eighteen months at Rebound. The evidence has fairly established that participation in the program could be for a period longer than eighteen months, conceivably for as long as twenty-four months. As counsel for the child has emphasized, there is thus a period of some six months beyond the expiration of the delinquency petition where Paul G.'s specialized needs might well require continued participation in the structured, therapeutic program at Rebound. In the court's view, assurance of continued funding for that purpose, in contrast to possible funding contingent on the decision of the Commissioner, is consistent with the young man's best interest.
Paul G. was committed as uncared for, having specialized needs which could not be met in his mother's home. The child continues to have those special needs, the mother's home certainly does not have the professional capacity or resources to address those needs, and the mother will not have him in her home, or in the community, until Paul is certified by the Rebound administration as suitable for discharge from that facility and "ready to come home." Thus, the child's situation now is substantially the same as when he was originally committed as uncared/for: Paul G. has specialized needs, those needs cannot be met in his home, and his mother will not have him at home (he is homeless). Accordingly, the same cause that existed originally for the uncared/for commitment, exists at present. While Section 46b-129(g) "does not limit the inquiry to the original cause, but merely specifies cause," the court "upon a revocation petition may consider if any cause for commitment still exists." (Emphasis in original). In Re Juvenile Appeal (Anonymous), supra at p. 659. Here, it appears to the court that the original cause for the uncared/for commitment still exists; additionally, cause for the uncared/for commitment exists in that the commitment provides an in place vehicle for reasonably assuring the funding of any treatment or services that need to be provided Paul G. beyond the expiration of the delinquency commitment. To put at risk continued treatment or services that may be needed after September 24, 1993 (when Paul will be a sixteen-year old adolescent) is not in the child's best interests. CT Page 7313
It has not been established that cause for the uncared for commitment no longer exists; nor has it been established that revocation of the uncared/for commitment would serve the child's best interests. The petition of DCYS for revocation of the order of commitment (petition dated January 13, 1992, filed January 17, 1992) is hereby Denied and is Ordered: Dismissed.
MULCAHY, J.