[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This proceeding is a limited contested dissolution of a marriage between the parties which occurred on August 28, 1982 at Redding, Connecticut. For all intents and purposes, it ceased to be a viable marriage in late 1992, or in the early months of 1993. The plaintiff has resided continuously in this jurisdiction at least twelve (12) months prior to the date of the hearing of this dissolution on January 31, 1995. Three children were born to this union: Alex on January 4, 1985; Christopher on November 4, 1986; and James on April 22, 1992. No other minor children have been born to the plaintiff since the date of the marriage. No state, federal or municipal agency, public or private trust or foundation is contributing CT Page 2987 to the support of either of the parties. The court finds that the marriage has broken down irretrievably and a decree may enter on the grounds of irretrievable breakdown.
The plaintiff is thirty-seven (37) years old and received an undergraduate degree in zoology. She intended to go to medical school but subsequently decided she did not wish to pursue medicine as a career. The defendant is thirty-eight (38) years old and has an undergraduate degree in premedical studies from Duke University. He obtained a dental degree from the University of Southern California in Los Angeles and is licensed to practice dentistry in that state. Each enjoys good health.
The defendant completed his last two years of dental school after the marriage during which time the plaintiff worked as a store manager in Beverly Hills. Each of the families contributed financially during those years. It was necessary for him to borrow money to fund his dental school education and some of those loans are currently in default. The plaintiff at the time of the marriage owned stock worth approximately twenty thousand ($20,000) dollars which was sold for a down payment on their first home. She has also received gifts from her grandparents in the amount of ten thousand ($10,000) dollars and twenty-five hundred ($2,500) dollars from an aunt. All these funds went to family expenses. Since her separation in late 1992 or 1993, she has received stock and cash from her grandparent's trust fund. The amount received approximated one hundred forty-nine thousand ($149,000) dollars in cash and stock.
After his graduation and necessary certification from the State of California, he began to practice and was working in a dental office at the rate of two hundred fifty ($250) dollars a day. In 1985, he purchased a dental office in Cupertino, California. The plaintiff joined in that practice as its office manager. She was not paid and he earned approximately ninety-five thousand ($95,000) dollars per year in that practice. Thereafter, he purchased other practices, signing promissory notes for very substantial sums.
The plaintiff believes that he terminated his dental practice because of the fear of contracting AIDS. The last period of time spent on the practice was devoted to examinations and no dental surgery or procedures akin thereto. The defendant would attribute the termination of his practice to the beleaguered economy and the inability to satisfy his indebtedness in terms of the installments thereon as they came due. His latest scheme was to take over an office away from the San Diego are where he had practiced in a town CT Page 2988 called Redding, California. One can only question his efforts toward success in that venture and, as might be expected, by that time the marriage was rapidly degenerating. It was at approximately this time that the plaintiff returned to Connecticut to visit her parents and that is her residence today with those children.
At the time that the defendant found himself functioning as a dental real estate mogul as it were, he learned of and became a participant to what this court would characterize as a cult known as the Miracle of Love. Whether this entity proved a safe haven to protect him from his business and professional failures and his rapidly deteriorating marriage or whether he was a sincere participant truly accepting the philosophy of this cult to what might be considered the better life, is an open question with this court which this court is not obligated to resolve. He continues to practice sporadically as a dentist and despite his involved pursed profession, appears to be spending more employable time as a dental hygienist receiving two hundred ($200) dollar per day per diem. It is truly sad to see a well educated, talented gentleman, who has proven his ability to successfully pursue his profession, acknowledging that he is currently engaged in itinerant dentistry and auxiliary services ordinarily supplied by others with substantially less education and intelligence than he. The thought also occurs to one that the life style he currently pursues is self-imposed and accepted economic limitations which he may enjoy and may well be a misguided effort to avoid his marital obligations which are now being determined in this decree. Despite his professional and personal life style and those economic limitations, this court finds from the testimonial and documentary evidence before it that he clearly, unequivocally and certainly has an earning capacity of seventy-five thousand ($75,000) dollars as of this time.
The plaintiff has indicated that she did in fact manage his first practice and was listed as an employee subsequent thereto for the avowed purpose of reducing tax liability. She is quick to admit that she in fact was not employed but was listed as an employee and also listed as drawing a salary. While they each contributed individually through their families to the marriage, particularly while the defendant was in dental school, the evidence established that the plaintiff's financial contributions were in excess of the defendant's. In fairness to him, most of his earnings went into making a better life for his wife and family when he was able to do so and while paying the financial obligations of purchasing the several practices in which he became involved. Through most of the marriage, the plaintiff has devoted her time CT Page 2989 to being a homemaker and mother for three young children.
Among the problems that the plaintiff recites as contributing to the breakdown of the marriage were their differences of opinion on the manner in which the children were to be brought up, disagreement over immunization and medical treatment, the feeding and nutrition of the children, a rather strong bias against the prescribed use of antibiotics and unilateral decisions with respect to family matters. The truly irreconcilable differences seem to be predicated upon his leaving practice, his involvement with the Miracle of Love entity and what hindsight dictates to be ill conceived, illogical and perhaps foolish business judgments. The defendant, if not acknowledging, recognizes some of these problems and in a sense would refute her allegations. The court finds that refutation to be ineffective and unpersuasive. The primary responsibility for the breakdown rests with the defendant. Despite that finding, our Supreme Court is warned against overemphasizing the issue of fault and has placed it in a proper prospective by defining that concept as being one of the many criteria which must be applied in entering orders in a decree of dissolution. See Sandsv. Sands, 188 Conn. 98, 102. Since returning to Connecticut, the plaintiff has devoted her employment efforts to a part-time category in order to be home with the children.
In making or modifying any order with respect to custody or visitation, the court must be guided by the best interests of the child. See Simons v. Simons, 172 Conn. 341; Krasnow v. Krasnow,140 Conn. 254, 260; Spicer v. Spicerf, 173 Conn. 161, 162. The rights, wishes and desires of the parents, while a consideration, must be subordinated to those best interests. See Ridgeway v. Ridgeway,180 Conn. 533, 541; Palmieri v. Palmieri, 171 Conn. 289, 290; In reAppeal of Kindis, 162 Conn. 239, 242. See also Sec. 46b-56 of the General Statutes. The court, after due consideration of the testimony that was heard, the statutory criteria, and the cases which speak to them, finds that the best interests of the children mandate an award of custody to the plaintiff. The defendant is awarded reasonable, liberal and flexible rights of visitation with the children including without limitation the following schedule. Two extended periods of visitation with the children in California, being for at least one week at Christmas beginning no sooner than noon on December 26 of each year; and the second for a period of two weeks in the summer. Notice of intention to exercise these rights of visitation in California shall be satisfied by written notice deposited in the United States mail and so postmarked sixty (60) days prior to said period of visitation. Notice requirements set forth CT Page 2990 in this decree shall not establish time as being of the essence. Prior to any visit in California, the defendant is ordered to provide pictures of his residence, including the internal fixtures and furnishings, and permit anyone representing the plaintiff to inspect that residence on one occasion any time it may change. In addition to providing said pictures, he shall identify the automobile which he is operating and intends to operate during the period of visitation and give satisfactory evidence of the then automobile insurance upon that vehicle as well as evidence of his then current valid operator's license. These requirements shall be fulfilled within twenty (20) days of the first day of the scheduled visitation.
Under no circumstances shall the children have any contact with the entity known as Miracle of Love, its members or participants; good faith and accidental encounters excepted. Any and all costs incurred in the exercise of that visitation, including without limitation the children's transportation to and from California, shall be the responsibility of and shall be paid for by the defendant. Each of the parties shall provide the other with the current in-service telephone number and the defendant is permitted reasonable telephonic contact with the children. The defendant is also awarded visitation rights with the children here in Connecticut at his discretion upon thirty (30) days notice to the plaintiff. Such visitation, however, shall be subject to prior plans of the plaintiff made in good faith and not for the purpose of frustrating the defendant's visitation. Upon the exercise of the plaintiff's right to assert prior plans, the defendant shall reschedule his intended visitation. Only one of every three intended Connecticut visitations shall be modifiable by the plaintiff's prior plans if any. This schedule is intended to constitute minimum visitation for the defendant whose award of visitation was reasonable, liberal or flexible and intended to be exactly that and no less.
The statutory measure of child support directs the court to consider an abundance of factors applicable to the parents and a minimally greater number of considerations applicable to the child or children. See General Statutes, Sec. 46b-84. To determine the amount of support required by minor children, the court considers the needs of the children and the respective abilities of the parties to maintain them. Brown v. Brown, 190 Conn. 345, 348;Whitney v. Whitney, 171 Conn. 23, 29. The court has duly considered the statute and the decisions which address its criteria. The defendant is ordered to pay to the plaintiff as and for child CT Page 2991 support the sum of four hundred ($400) dollars per week until each of the children reaches the age of majority, dies, marries or otherwise becomes emancipated. There was a court determined arrearage in child support which was found to be six thousand four hundred twenty-eight ($6,428) dollars as of January 9, 1995. The defendant on the date of trial, January 31, 1995, paid to the plaintiff the sum of three thousand two hundred ($3,200) dollars in accordance with the order of the court at the time the finding was entered. It is assumed, perhaps gratuitously, that that check represented collectible funds and was in fact paid. That payment, if made, would reduce the debt to thirty-two hundred twenty-eight ($3,228) dollars. This pendente lite arrearage finding, entered as of the aforesaid date of the hearing on the dissolution, shall be increased by thirty-two hundred ($3,200) dollars if that check was dishonored and not paid by the drawee. This support order is predicated upon the court's previously entered finding that the defendant indeed has an earning capacity of seventy-five thousand ($75,000) dollars per year.
In any decision on whether or not an award of alimony is appropriate in any case, the court is required to consider several different criteria. Among those are the length of the marriage, the cause of the dissolution of the marriage or legal separation, the age, health, station, occupation, amount and source of income, vocational skills, employability and the estate and needs of each of the parties. Dubicki v. Dubicki, 186 Conn. 709, 714-715; citing therein McPhee v. McPhee, 186 Conn. 167, 171 n. 3; see also Krieblev. Krieble, 168 Conn. 7, 8; Baker v. Baker, 166 Conn. 476, 478. The primary purpose of periodic and/or lump sum alimony is based primarily upon a continuing duty to support. Dubicki v. Dubicki, supra, 714 n. 2;Wood v. Wood, 165 Conn. 777, 784. In accordance with what at least inferentially is a statutory mandate, the court has weighed the various statutory criteria and given due regard to the decisions that interpret them. See Sec. 46b-82 of the General Statutes. The defendant is ordered to pay to the plaintiff as and for alimony the sum of two hundred ($200) dollars per week. This order shall endure until such time as either party may die or the plaintiff's remarriage or cohabitation with an unrelated male or ten years from the date hereof, whichever shall first occur. This order is also entered in recognition of and reliance upon the defendant's previously determined earning capacity.
The plaintiff is ordered to maintain medical insurance coverage currently available to her, which policy includes the children as beneficiaries thereunder. In the event, however, that the CT Page 2992 defendant resumes the practice of his profession as an employee, associate, principal, partner, owner, or in any other capacity in which medical insurance benefits are available to him, then in that event he is to immediately confer with the plaintiff and advise her of the benefits available, and the better policy shall include an endorsement providing medical coverage for those children. The obligation to maintain medical insurance shall exist until each of the children attains the age of majority, dies, marries, or otherwise becomes emancipated, or if the children are involved in secondary educational entities, and the contract provides for coverage to an age in excess of the age of majority or emancipation, then that contract provision providing greater coverage for the children shall govern the term of the coverage. The parties shall be responsible for any unreimbursed medical expenses incurred for the benefit of the children. Whomever may incur such medical services shall present the other party with a detailed statement of those services and charges therefor and that party shall pay his or her half of the unreimbursed medical expenses to the party obtaining those services within thirty (30) days of the mailing of such statement.
In November of 1993, a court order was entered upon an agreement with respect to the responsibility for unreimbursed medical expenses including medical insurance for the benefit of the minor children. The total unreimbursed medical expenses to date are five thousand eight hundred eight dollars and one ($5,808.01) cent. The defendant is ordered to pay his share thereof (two thousand nine hundred four ($2,904) dollars) in collectible funds within thirty (30) days from today's date.
The defendant is awarded no interest whatsoever in the assets set forth in the plaintiff's affidavit. Those assets resulted from the distribution of trust funds from the estate of deceased members of her family. In passing, it is obvious that she has been called upon to utilize these funds to support herself and the children as a result of the defendant's consistent default. In accordance with his previous performance or performance to date, his satisfaction of his obligations permit this court to recognize a very strong inference that the performance mandated by these orders will in fact occur only upon compulsory legal process and sanction.
No award of counsel fees is entered in this dissolution. Some evidence was received during the trial concerning an evaluation of the children and of the parties in this particular litigation. However, at this time the court declines to enter any such orders. Judgment may enter in accordance with the foregoing. CT Page 2993
Moraghan, J.