[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The instant proceeding is a dissolution of a certain marriage CT Page 8699 between the parties which occurred on August 5, 1972 in Huntington, New York. The plaintiff has resided continually within this jurisdiction for at least twelve months prior to the filing of the complaint, and all statutory stays have expired. Two children were born of this union, Sara W., who was born on February 19, 1976, and has attained her majority, and Jennifer Whitney Nemerov, who was born on August 3, 1980. No other minor children have been born to the plaintiff since the date of her marriage. No federal state or local agency, trust or foundation is contributing to the support of either party. The court finds that the marriage has broken down irretrievably, and a decree may enter on the grounds of irretrievable breakdown.
The defendant is fifty-one years old and apparently enjoys good health, is employed as a toy salesman with a company known as T.L. Toys Hong Kong LTD at an annual salary, including a bonus, of fifty to sixty thousand ($50,000 to $60,000) dollars, together with an expense account.[1] In addition to this, he had his own toy company in 1995 that he called the Hartley Marketing LLC which had catalogues and which was apparently operated from his home. The 1995 tax return showed a net income of sixteen thousand nine hundred eighty-eight ($16,988) dollars from that secondary source of employment. The court finds that his earning capacity, conservatively stated, is at least seventy-five thousand ($75,000) dollars per year.
The plaintiff, whose maiden name was Sass, is forty-seven years old and is not in the best of health.[2] She suffers from Graves disease which seems to affect the hands and fingers much like arthritis, her eyesight, and her short term memory. She recites that her entire body aches, her teeth ache and she is aware of pressure behind her eyes which pushes them outward. She is presently employed at Macy's at the Danbury Fair Mall. She demonstrates an earning capacity of approximately twenty-two thousand five hundred ($22,500) dollars per year.
It appears as though the emancipated daughter, Sara, was and is not a matter of unusual concern for her parents. Her father, during the pendency of this litigation, purchased a Saab automobile for her. Whether that was a new car or pre-owned vehicle is not disclosed by the evidence. However, Jennifer has some very serious problems. She suffers from a major depression, has attempted suicide, for which she has been hospitalized, and is constantly medicated. Her disorder has been described as life threatening, and she must maintain the medication to sustain her CT Page 8700 health. She has been treated by psychiatrists and is currently in therapy with a registered therapist. There are past due bills from the hospital, the psychiatrist, and also from the therapist. Those bills amount to four thousand seven hundred forty-six ($4746) dollars.
The evidence adduced at trial portrays the defendant as a womanizer and someone who inflicted physical and emotional damage upon the plaintiff.[3] The court finds that evidence credible and based thereon finds the primary responsibility for the breakdown of the marriage to be that of the defendant.
Our Supreme Court has warned against overemphasizing the issue of fault and has placed it in the proper prospective by defining that concept as being one of the many criteria which must be applied in entering orders in a decree of dissolution. See Sands v. Sands, 188 Conn. 98, 102.
In making or modifying any order with respect to custody or visitation, the court should be guided by the best interests of the child. See Simons v. Simons, 172 Conn. 341, 342; Krasnow v.Krasnow, 140 Conn. 254, 260; Spicer v. Spicer, 173 Conn. 161,162. The rights, wishes and desires of the parents, while a consideration, must be subordinated to those best interests. SeeRidgeway v. Ridgeway, 180 Conn. 533, 541; Palmieri v. Palmieri,171 Conn. 289, 290; In re Appeal of Kindis, 162 Conn. 239, 242. This performance or lack thereof is hardly consistent with the best interests of the child. An award of custody, individually or jointly, with the defendant under these circumstances cannot be justified in logic or in law.
The minor child, Jennifer, has lived with the plaintiff since the inception of the dissolution, and the parties have executed a stipulation with respect to custody, awarding sole custody to the plaintiff. The defendant did not pursue any custodial claims at trial. While not obligated to follow that stipulation, the court does award custody to the plaintiff and awards the defendant reasonable, liberal and flexible rights of visitation. However, those visitation rights are subject to reasonable notice to the plaintiff, and those rights of visitation shall occur within a fifty mile radius of the plaintiff's then residence absent her consent to extend that distance on each specific occasion. The conduct of the defendant dictates this award.
The defendant has refused to pay medical bills for CT Page 8701 psychiatric and psychotherapy for the minor child, has advised her not to take the medications prescribed for her disorder, has denigrated the therapist and directed her not to attend any more therapy sessions.[4] His child support payments have been minimal and there is an arrearage as of July 24, 1997 of nine thousand five hundred fifty ($9550) dollars.
The defendant is ordered to pay to the plaintiff, as and for child support, the sum of one hundred seventy-five ($175) dollars per week until such time as she attains the age of majority, dies, marries or otherwise becomes emancipated. This award comports with child support guidelines. For purposes of definition of the term majority, the court considers what might be called classic majority (eighteen) or statutory majority (nineteen), in the event that she has not completed high school by her nineteenth birthday. He is also directed to maintain medical insurance for the benefit of the minor child until such time as she attains the age of majority, dies, remarries or otherwise becomes emancipated. Once again, for purposes of definition of the term majority, the court considers classic majority at eighteen or contractual majority (twenty-three) in the event she attends under-graduate school and the medical insurance carrier provides for that additional coverage under its policy. In addition thereto, the plaintiff as a custodial parent is awarded and is directed to utilize each and every right provided to the custodial parent with respect to medical insurance as set forth in § 46b-84 under subsection (d) of the General Statutes, and any and all of its other subsections. The parties are ordered to equally share the cost of all unreimbursed medical, psychological, psychiatric, therapeutic, hospital and related necessary services incurred for the benefit of the minor child. In entering these orders, particularly child support, the court has considered the criteria set forth in §46b-84 (c) of the General Statutes and the cases which speak to said criteria. An immediate wage execution is ordered and shall become effective at such time as it may be appropriate and/or enforceable.
In determining whether or not to award alimony, the court should consider the length of the marriage, the cause of the dissolution of the marriage, legal separation, the age, health, station, occupation, amount and source of income, vocational schools, employability, the estate and needs of each of the parties, and any property award pursuant to §§ 46b-81 (c),46b-82. Dubicki v. Dubicki, 186 Conn. 709, 714-15; citing therein CT Page 8702McPhee v. McPhee, 186 Conn. 167, 171 n. 3; see Krieble v. Krieble,168 Conn. 7, 8; Baker v. Baker, 166 Conn. 476, 478. The purpose of periodic and/or lump sum alimony is based primarily upon a continuing duty to support. Dubicki v. Dubicki, supra, 714 n. 2;Wood v. Wood, 165 Conn. 777, 778. The court has considered the statutory criteria, together with the cases which address them. The defendant is ordered to pay to the plaintiff as and for periodic alimony the sum of two hundred ($200) dollars per week until such time as she dies, marries or cohabits with an unrelated male. There is an arrearage of alimony under the pendente lite orders previously entered in this court in the amount of eleven thousand six hundred ($11,600) dollars.
The defendant has twice been arrested under Writs of Ne Exeat and has posted two bonds to guarantee his appearance under those writs. The first of those two was in the amount of five thousand eight hundred ($5800) dollars, and the second in the amount of twenty thousand ($20,000) dollars. He failed to appear in each instance and those bonds have been "forfeited" as it were as a result of that default in appearance. It is not clear to this court whether or not those funds are being held or have been ordered distributed to the plaintiff for payment of the arrearages under the pendente lite orders of child support and alimony, together with unpaid medical bills. In the event there has been no order of distribution, it is hereby ordered that those funds be delivered to the plaintiff in satisfaction of those arrearages in those pendente lite orders of alimony, child support and unpaid medical expenses. In entering this order, the court is making no finding as to any other pendente lite arrearage or debt owing to the plaintiff by the defendant. It will address no other claims which have not been set forth as orders in this decree.
Each of the parties has asserted a claim for substantial interest in and to the marital domicile. In assigning marital property, "the trial court must also consider the liabilities of the parties, `the opportunity of each for future acquisition of capital assets and income . . . [and] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates.'" Dubicki v. Dubicki, supra, 714-15; McPhee v. McPhee, supra, 171; Corbin v. Corbin,179 Conn. 622, 624. The court is vested with broad discretion in awarding alimony and dividing property as long as it considers all relevant statutory criteria. It is not obligated to make express findings on each and it is not required to give equal weight to CT Page 8703 each in determining the award. No single criterion is preferred over the others and the weight placed on each is dependent upon the circumstances of each case. Debowsky v. Debowsky,12 Conn. App. 525, 526-27; Carpenter v. Carpenter, 188 Conn. 736, 740-41;Weiman v. Weiman, 188 Conn. 232, 234. The purpose of the property division is to equitably divide the ownership of the parties' property. See Dubicki v. Dubicki, supra, 714 n. 2. It may also be said to unscramble the ownership of property, giving to each spouse what is equitably his. Beede v. Beede, 186 Conn. 191, 195;Weiman v. Weiman, supra; see § 46b-81 (c) of the General Statutes. Once again, the court has considered those statutory criteria and the cases which interpret them.
The marital domicile has been listed for sale and did indeed close on or about September 9 of this year. The sale price was one hundred seventy-two thousand ($172,000) dollars. After all encumbrances, closing costs and adjustments were satisfied, the net proceeds were fifty-five thousand seven hundred thirty dollars and ninety-three ($55,730.93) cents.[5] Those proceeds are augmented by the addition of a fifteen thousand ($15,000) dollar advance to the plaintiff. This augmentation creates a distributable fund in the amount of seventy thousand seven hundred thirty dollars and ninety-three ($70,730.93) cents. That fund shall be divided between the parties on the basis of sixty (60%) percent to the plaintiff and forty (40%) percent to the defendant. That fifteen thousand ($15,000) dollar advance to the plaintiff shall be deducted from her share.
This court, however, cannot ignore and is keenly aware of the defendant's default in the payment of pendente lite orders and necessarily must infer that performance of these orders entered in this decree may well not be honored. Therefore, the court orders that the defendant's forty (40%) percent share of the net proceeds be held in an interest bearing account in the name of both attorneys for a term of five years from today's date. They shall charge no fee for that service. Upon the expiration of that five year period, if the defendant performs his obligations hereunder in terms of alimony, child support and medical reimbursement, those funds shall be delivered over to him, together with any interest that has accrued thereon. In the event of default, however, that forty (40%) percent share shall be reduced by, if not consumed by, the amount of the default, and the arrearage in the orders upon which he has defaulted shall be forthwith delivered, together with interest thereon to the plaintiff. CT Page 8704
The defendant is ordered to convey to the plaintiff all of his right, title and interest in and to the Vermont property in accordance with §§ 46b-81 and 52-22 of the General Statutes. There is an IRA Vanguard account (account number 09794028658) which is also known as the Vanguard Star Fund in amount of fifty-eight thousand ($58,000) dollars which was previously awarded exclusively to the plaintiff free and clear of any claims of the defendant thereto. In the event that such award has in some way been rendered ineffective, then, and in that event, that account and those funds are awarded and ordered transferred and paid over to the plaintiff forthwith, free and clear of any claim thereto by the defendant.
The plaintiff is also awarded the 1987 Nissan Pathfinder automobile free and clear of any right, title, claim or interest asserted by the defendant. The defendant is ordered to execute any documentation necessary to effectuate this award. The defendant is awarded such other investments, IRAs and other retirement funds or pensions not addressed in this decree. The defendant is awarded the Saab automobile he currently owns and it is declared to be his sole property free and clear from any claims that the plaintiff may have in and to that vehicle. The plaintiff is ordered to execute any documentation necessary to effectuate this award.
The attorney for the child has rendered extremely valuable and capable services in this case. Her fee in the amount of seven thousand seven hundred sixty-six dollars and twenty-five ($7766.25) cents is found to be more than fair and reasonable. With respect thereto, on June 14, 1996, the court (Stodolink, J.) ordered the defendant to pay a retainer to the attorney for the child in the amount of three thousand ($3000) dollars in three equal monthly installments beginning July 15 of that year. No payment was ever received. Those funds then ordered are now ordered deducted from the defendant's prorated share of the distributable funds from the closing on the former marital domicile and further ordered paid over immediately to counsel for the minor child. The parties are ordered to equally share and to satisfy the balance of the attorney's fees of the attorney for the child from their respective shares of the distribution of the distributable proceeds from the sale of the dwelling within sixty (60) days from the date of this decree.
The defendant is ordered to pay over to the plaintiff the sum CT Page 8705 of five thousand ($5000) dollars as and for counsel fees from his share of those same funds. The court recognizes that counsel has previously received the sum of twenty-three thousand five hundred ($23,500) dollars from the proceeds of the sale of the marital domicile. No affidavit in support of her claim for counsel fees has been submitted, and no other additional fees are awarded.
The defendant is also ordered to purchase and/or maintain a life insurance policy on his own life in the amount of two hundred fifty thousand ($250,000) dollars, naming the plaintiff as the irrevocable beneficiary so long as his legal obligations to the plaintiff exist. He is further ordered to offer proof of the unencumbered existence of said policy on the first working day of January each year.
The plaintiff has requested the restoration of her maiden name in accordance with § 46b-63 of the General Statutes. That request is granted and from and after today's date she shall once again be known as Georgann Sass.
Judgment may enter in accordance with the foregoing.
Moraghan, J.