[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action arises out of a certain marriage between the parties which occurred on February 17, 1990 in Naugatuck, Connecticut. Each of the parties has resided continuously in this jurisdiction at least twelve months prior to the institution of this litigation. Two minor children were born to the plaintiff as a result of this union: Ashley M. Grailich, born October 30, 1992; and Matthew John Grailich, born February 26, 2001. No other children were born to this lady since the date of the union, and she is not pregnant at this time. Neither party is receiving any assistance which requires reimbursement from the federal government, the state government, the local government, or any public or private fund or trust. The parties claim that the marriage has broken down irretrievably and, indeed, the court so finds. A dissolution may enter on the grounds of irretrievable breakdown.
The plaintiff is thirty-one years old and enjoys good health, with the exception of her last pregnancy. During that period, she experienced severe anxiety attacks and was treated throughout the pregnancy. She also saw a counselor, which was discontinued in June or July of 2001. She is a high school graduate and possesses no skills of any significance. She did not seek to continue her education after high school. Her employment, in inverse order of these jobs, was in a doughnut shop owned by the defendant's sister. She prepared and also served the product, and worked twenty hours (20) per week for minimum wage. Prior to that, she worked for a distribution center in Beacon Falls as a picker/packer. She earned five dollars and fifty cents ($5.50) to six dollars and twenty cents ($6.20) an hour. At the time when she was married, she was employed by Kombi Limited as a printer/packer. She worked forty hours (40) per week for a minimum wage. There was no special training for any of those jobs. She apparently could resume that type of a career, or, as she says, function as a waitress. However, at this time, she is not working at all CT Page 14152 and is a "full-time mom."
The defendant is also thirty-one years old, enjoys good health, and received a general educational development certificate after one year of high school. He continued his studies after high school for a period of approximately one year. He holds a P2 plumbing license, and, at the time of the marriage, was working in the Heritage Village in the maintenance department. He has also worked for Sirocco Plumbing and Hitchcock Plumbing and Heating. On January 8, 1999, he became employed by the Allegheny Ludlum Corporation. His earning capacity fluctuates between approximately eight hundred fifty ($850) dollars per week and nine hundred ($900) dollars, depending upon the amount of overtime he is able to obtain.
It appears as though the marriage was happy and successful for approximately two and one-half (2 1/2) years, until shortly after Ashley was born. The type of activity in which they engaged during those happy times was a single vacation, as best she recalls; the use of their swimming pool; and quadding.[1] The family owned two quads, one they purchased and one was a gift from the paternal sister. The defendant has both of them at this time. Upon the birth of their first child, most of the plaintiff's time was consumed with the baby, while the defendant worked at his full-time employment, as well as moonlighting. It was about this time that the debts became almost insurmountable, the tension increased, and the marriage began to break down. They had purchased a home in Watertown that eventually was lost through foreclosure. According to the plaintiff, he began staying out at night, not paying bills, and not paying any attention to Ashley. The marriage continued to deteriorate until August 6, 2000, when the defendant left. It is the plaintiff's complaint that he did not help her at all, paid no attention to the child, did nothing with the child, did not pay bills, and the relationship became primarily adversarial. The defendant's version is that the plaintiff sat around all day and did nothing but watch television. The house was dirty, with dishes in the sink, and when he came home from work, whatever time it was, he had to cook, do the dishes, vacuum, and take care of the child. The one difference in attributing the stigma of the breakdown to one of the parties is that the defendant, in fact, became involved with another woman and continues to be involved with that same person. While in this case, as in any case, fault is usually a bilateral proposition with neither of the parties being solely to blame for the breakup. However, in this case, the mantel of culpability must be draped upon the defendant despite the fact that the plaintiff is hardly blameless. Despite that finding, one must be aware of the caveat impressed upon this element by our Supreme Court. SeeSands v. Sands, 188 Conn. 98, 102. CT Page 14153
In entering or modifying any order with respect to custody or visitation, the court must be guided by the best interests of the child. See Simons v. Simons, 172 Conn. 341; Krasnow v. Krasnow, 140 Conn. 254,260; Spicer v. Spicer, 173 Conn. 161, 162. The rights, wishes and desires of the parents, while a consideration, must be subordinated to those best interests of that child or children. See Ridgeway v. Ridgeway,180 Conn. 533, 541; Palmieri v. Palmieri, 171 Conn. 289, 290; In reAppeal of Kindis, 162 Conn. 239, 242. See also § 46b-56 of the General Statutes.
The position of the parties with respect to this issue is one of disagreement. The plaintiff claims full custody and the defendant joint custody. The defendant, however, has not conformed to the requirements of § 46b-56(a)(c) of the General Statutes. The court, after due consideration of the testimony that was heard, the statutory criteria and the cases which address those criteria, finds that the best interests of the children mandate an award of custody to the plaintiff. The defendant is awarded reasonable, liberal and flexible rights of visitation with the children including the following non-exclusive schedule:
A. With Ashley:
Wednesdays from 4:00 in the afternoon until 8:00 in the evening; Fridays from 4:00 in the afternoon until 8:00 in the evening. Alternating weekends from Friday at 4:00 in the afternoon until Sunday at 8:00 in the evening. The parties shall also alternate the following holidays: New Year's Eve, New Year's Day, Christmas Eve until 12:00 noon on Christmas Day, July 4th, Labor Day, Thanksgiving Eve, Thanksgiving Day beginning at 12:00 noon, Easter, and Memorial Day. Mother's Day shall be spent with the plaintiff, Father's Day with the defendant. Birthdays are to be alternated. The defendant shall have at least four hours visitation on the child's birthday. Matthew, Ashley, her father, and to some extent her mother, have been involved in counseling at the Thomaston Counseling Center located at 258 South Main Street in Thomaston, Connecticut.
B. With Matthew:
Supervision, in the sense of facilitating visitation as opposed to being required to protect the child while visitation is occurring, until such time as the representatives of the Center are convinced that visitation should be expanded ultimately into the same schedule that the father enjoys with Ashley.
The measure of child support mandates the consideration of an abundance of factors applicable to the parents and a minimally greater number of factors applicable to the children. See § 46b-84(d) of the General CT Page 14154 Statutes. To determine what that amount should be, the court considers the needs of the children with respect to the abilities of the parents to maintain them, and the mandates of the Child Support Guidelines established in accordance with § 46b-215a. See Brown v. Brown,190 Conn. 345, 348; Whitney v. Whitney, 171 Conn. 23, 29. The court has weighed the mandate of the statutes, the cases which speak to the criteria, and the requirements of the Child Support Guidelines which comport with this child support order. After such reflection and direction, the defendant is ordered to pay to the plaintiff as and for child support the sum of two hundred fifteen ($215) dollars per week until such time as the respective children attain the age of eighteen,[2]
die, marry, or otherwise become emancipated.
In any decision on whether or not an award of alimony is appropriate the court is constrained to consider the criteria set forth in §46b-82, together with the case law which interprets them. See Dubicki v.Dubicki, 186 Conn. 709, 714-15; citing therein McPhee v. McPhee,186 Conn. 167, 171 n. 3; see also Krieble v. Krieble, 168 Conn. 7, 8; Baker v. Baker, 166 Conn. 476, 478. The primary purpose of periodic alimony is based upon a continuing duty to support. Dubicki v. Dubicki, supra, 714 n. 2; Wood v. Wood, 165 Conn. 777, 784. After due consideration to all of the elements expressed therein, the defendant is ordered to pay to the plaintiff, as and for periodic alimony, the sum of sixty ($60) dollars per week for a period of ten (10) years or until such time as either party may die or the plaintiff remarries or cohabits with an unrelated male under the common law definition of cohabitation, whichever shall first occur.
It cannot be seriously contested that the plaintiff must seek employment. The length of the award of alimony should be more than a sufficient period for her to rehabilitate herself through on the job training and/or through the myriad of opportunities available in the various adult education programs in the towns and cities of this state.
The defendant is ordered to maintain or continue to maintain health insurance for the benefit of the two minor children, as well as the life insurance he enjoys as a perquisite to his employment. He shall name the children as irrevocable beneficiaries under that life insurance policy so long as his support obligation to them exists. He is further ordered to pay seventy (70) percent of unreimbursed medical expenses, and the plaintiff is ordered to pay thirty (30) percent of said unreimbursed medical expenses. The defendant is given the right to claim both children as dependents on his federal tax return as well as the state tax return throughout the period of his support obligation, subject to the Internal Revenue Code as it exists and is amended from time to time. The plaintiff is awarded each and every right to which she is entitled under the COBRA CT Page 14155 statutes, as that coverage exists under the defendant employer's plan, at her own cost and expense. The plaintiff is awarded the 1993 Ford Explorer, and the defendant is awarded the 1994 Dodge Ram. Each of the parties is ordered to execute with all deliberate haste any and all documents necessary to transfer the titles to those vehicles to effectuate this order. Thereafter, each of the parties will be responsible for present taxes, insurance and maintenance on their respective vehicles, and each shall indemnify and hold the other harmless from any and all claims arising out of the ownership, operation, maintenance, and occupancy of the respective vehicles. The defendant is awarded both of the all-terrain vehicles and the utility trailer.
The plaintiff is awarded forty (40) percent of the defendant's Individual Retirement Account and any pension plan to which he may be entitled, again, as a perquisite to his employment. The defendant's attorney shall prepare the Qualified Domestic Relations Order(s) to carry out this award at no cost or expense to the plaintiff. It or those orders are to be prepared with all deliberate haste at this time or at such time in the future any additional pension plans may become available. Each of the parties is awarded their respective checking accounts.
The plaintiff is ordered to be responsible for and to fully satisfy the following debts and obligations: (1) Capitol 1 VISA, (2) Capitol 1 MasterCard, (3) John Lydom loan, (4) Merrily Mikaitis judgment, and any personal property taxes due and owing and to become due and owing upon the vehicles which were awarded to her in this decree. The defendant is ordered to pay or to satisfy the following debts or liabilities: (1) the credit union debt, (2) the Sears account, (3) any deficiency from the foreclosure action on the former marital domicile, (4) Scholastic Book Services, (5) CMI Cablevision, (6) CCI/CL P debt, (7) rubbish removal, and (8) any and all past due personal property taxes upon any of the vehicles owned or awarded to the defendant in this proceeding. Each of the parties is further ordered to indemnify and hold the other harmless from any and all claims arising out of these debts until paid or otherwise discharged in a legal proceeding.
The family dog, a gift to Ashley, is awarded to the plaintiff, and currently, because of animal restrictions in her apartment complex, is in the possession of the maternal parents. However, during visitations, ifAshley chooses, the dog may accompany her on her visitations with the defendant. The court declines to issue any orders for the payment of counsel fees. Each of the parties is responsible for those which have been incurred by him or her to date.
Each of the parties has successfully completed the Parenting Education Program. An immediate wage execution may issue to guarantee the payment CT Page 14156 of the support and alimony orders.
Judgment may enter in accordance with the foregoing.
Moraghan, J.T.R.