[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on May 9, 1992 in Westport, Connecticut. They separated in February, 1994. There are no children issue of the marriage.
The plaintiff is 28 years of age, in good health and has been employed since 1988 by the Internal Revenue Service as a revenue agent. She works in the Norwalk office as a tax auditor. She is a graduate of Bryant College with a degree in accounting. She and the defendant were classmates in high school and began dating in their senior year at Bunnell High School and dated for eight years prior to their marriage. Her health she describes as good.
The defendant is 27 years of age, a graduate of Bunnell High School and Emery Riddle University in Daytona Beach, Florida, with a Bachelor of Science degree in Aeronautical Science. He is employed as a pilot for Colgan Air, Inc. as captain on a Beechcraft 1900. This is a 19 passenger plane. Colgan Air, Inc. is based in Manasus, Virginia. The defendant is based in Rutland, Vermont and rents an apartment there. His health he describes as excellent.
The parties separated in February, 1994. In February, 1993 they purchased a house at 95 Val Drive in Stratford for $148,000. They obtained a mortgage for $133,200. The down payment, cash to balance and closing costs were met with $8,000 that the plaintiff had prior to the marriage and which had been placed into a joint account in both names, $3,000 as a gift from the plaintiff's grandparents and $5,000 as a gift from the plaintiff's parents. Other than the money from the joint account the defendant put no further money into the house purchase.
Commencing in July or August, 1993, their marriage problems reached their height. The parties argued every day and there were numerous violent fights. The plaintiff claimed that the defendant precipitated the arguments. The plaintiff claimed that the defendant pushed her, hit her, shoved her and struck her about once a month, that he held her hands back, grabbed her hair and pulled her to the ground.
The defendant stated that the problems began the end of June or early 1992 relating to his job and his inability to have information relating to his flying schedule. He testified that it was she who was physically abusive and that she hit him frequently and that he never struck her. He testified, too, that she was so CT Page 10041 demanding that it was impossible to please her, that she was bossy and that she belittled him.
On the issue of credibility, the court accepts the testimony of the plaintiff more readily than that of the defendant. Regardless of whose testimony is to be believed, it is clear that the marriage of the parties has broken down irretrievably. The court finds that each party shares the blame for the breakdown of the marriage, although the court finds that the defendant is the one more at fault for the breakdown of the marriage.
Neither party seeks periodic alimony from the other. Both parties are gainfully employed, and each is self-sufficient and self-supporting. The parties are at issue on the division of the proceeds of the sale of the house, and the defendant seeks half of the plaintiff's 401(K) plan.
With regard to the sale of the house, the plaintiff seeks reimbursement for the expense she has incurred since the defendant vacated in February, 1994. At the time of their separation, the plaintiff took $5,000 from the joint account of the parties. It is certainly fair that one half of that amount be credited to the defendant's share of the mortgage payments from March 1 to the present. Additionally, in March the parties received $1800 as a federal tax refund and $303 as a state tax refund for the year 1993. The plaintiff deposited the $2103 to the parties' joint account and has spent that money to cover the household expenses. It is fair that one half of this sum be credited to the defendant's share of the mortgage payments during this period.
In January and February the defendant contributed $2600 towards the mortgage payments. The mortgage payments during the period January 1 to June 1 were $978 a month and $1319 a month from June 1 to October 1, for total mortgage payments for the period January 1 to October 1, 1994 of $10,166. The defendant's one half share is $5,083. Credits for the tax refunds and his share of the joint account total $3551. Commencing October 1, the monthly mortgage payments will be $1150 per month. The court considers that the defendant has contributed to the October and November mortgage payments. Those other expenses of the house since the plaintiff is residing in the house, should be the plaintiff's responsibility.
The house is presently listed for sale and was so listed the end of July. The asking price has recently been reduced from CT Page 10042 $164,900 to $159,900.
With regard to the plaintiff's 401(K) plan, the value of the plan as of April 30, 1994 was $9642. Plaintiff's contributions to the plan began in 1988 upon the commencement of her employment with the Internal Revenue Service. For the period 1988 to 1992, the plaintiff contributed two percent of her gross pay. For the period 1993 and 1994, she has contributed three percent of her gross pay. The government matched these contributions and also contributed an automatic one percent. Thus, for 1988 to 1992, the amount contributed to her account was five percent of her gross pay and for the years 1993 and 1994, seven percent of her gross pay. It is interesting that the defendant claims one half of the plaintiff's 401(K) plan even though part of the plan resulted during the period 1988 to the time of the marriage and a significant portion during the period after their separation from March, 1994 to date.
The court finds that the plaintiff's contributions to her 401(K) plan during the marriage had no effect upon her contributions to the expenses of the marriage. During all of the period of the marriage, her earnings were in excess of the defendant's. The plaintiff's IRA contributions were made prior to the marriage. It is fair and equitable that the plaintiff retain all of her 401(K) plan and her IRA.
Finally, the parties are in disagreement over the liability upon the People's Bank Visa bill. The court accepts the testimony of the plaintiff that $1100 of this bill was incurred by the parties jointly and that the balance over this amount is the plaintiff's personal liability.
The following language from the case of Weiman v. Weiman,188 Conn. 232 at 234 (1982) is as appropriate today as it was in 1982 and is applicable to this case.
 In determining whether to award alimony, the court "shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and [any property] award . . . pursuant to section CT Page 10043 46b-81 . . . ." General Statutes § 46b-82. In assigning property when dissolving a marriage, the court, in addition to the criteria listed in § 46b-82, must consider the liabilities of parties and "the opportunity of each for future acquisition of capital assets and income." General Statutes § 46b-81 (c).
 The court is not obligated to make express findings on each of these statutory criteria. Dubicki v. Dubicki, 186 Conn. 709, 716, 443 A.2d 1268 (1982); Posada v. Posada, 179 Conn. 568, 573, 427 A.2d 406 (1980). The purpose of alimony is to meet one's continuing duty to support; Wood v. Wood, 165 Conn. 777, 784, 345 A.2d 5 (1974); while the purpose of property division is to unscramble the ownership of property, giving to each spouse what is equitably his. Beede v. Beede, 186 Conn. 191, 195, 440 A.2d 283 (1982).
 In this matter the trial court was presented with a wealth of information which, although contradictory in some respects, addressed all areas of consideration required by the statutes.
The court makes the following findings in addition to those hereinbefore set forth.
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. Both parties are at fault for the breakdown of the marriage.
The court has considered all of the evidence, the applicable case law and the provisions of § 46b-81 of the General Statutes in arriving at its decision in this case. The court enters the following orders: CT Page 10044
1. A decree of dissolution of marriage shall enter on the ground of irretrievable breakdown of the marriage.
2. Neither party shall pay alimony to the other, the parties having waived periodic alimony.
3. There is an outstanding indebtedness on the People's Bank Visa account. Fifteen Hundred and Ninety ($1590.00) Dollars of this amount shall be the liability of the plaintiff, and she shall indemnify and hold harmless the defendant from any claim or demand upon this amount. The remaining balance of Eleven Hundred ($1100.00) Dollars shall be the joint liability of the plaintiff and the defendant and each shall be responsible for one half thereof. Commencing October 1, 1994, the defendant shall pay to the plaintiff the sum of Fifty ($50.00) Dollars and on the first day of each month thereafter until his 50 percent share has been fully paid.
4. Each party, except as herein set forth, shall be responsible for the liabilities listed on her or his financial affidavit and shall indemnify and hold harmless the other party from any claim or demand thereon.
5. The 1989 Honda Prelude shall remain the exclusive property of the plaintiff, and she shall be responsible for the car insurance, car tax and registration for said vehicle.
6. The 1985 Toyota Pickup shall remain the exclusive property of the defendant, and he shall be responsible for the car insurance, car tax and registration for said vehicle.
7. The People's Bank savings account in the amount of $2,290, as shown on the plaintiff's financial affidavit, shall be hers free of any claim or demand by the defendant.
8. The 401K Plan in the approximate amount of $9,642 and IRA in the approximate amount of $2,167, as shown on the plaintiff's financial affidavit, shall be hers free of any claim or demand by the defendant.
9. The tangible personal property in the possession of the plaintiff shall be wholly hers, free of any claim or demand by the defendant. The tangible personal property in the possession of the defendant shall be wholly his, free of any claim or demand by the plaintiff. CT Page 10045
10. Each party shall retain her or his own assets as listed on their respective financial affidavits, except as herein stated.
11. The jointly owned real estate located at 95 Val Drive, Stratford, Connecticut, has been placed upon the market for sale at a listing price of One Hundred Fifty-nine Thousand Five Hundred ($159,500.00) Dollars. The property shall continue to be so listed. The listing price shall be reduced by two (2%) percent each sixty (60) days. The listing price shall not, however, be reduced below $149,500 unless recommended by the listing broker and agreed to by both of the parties. However, any offer within five (5%) percent of the then listing price shall be accepted by the parties. In the event there is any disagreement between the parties regarding the listing price or the acceptance of any offer for the purchase of said property, the parties shall return to court for the resolution of any such disagreement or resolve such differences through any form of mediation acceptable to the parties.
 Upon the sale of the property and after the payment of the brokerage commission(s), the usual closing expenses, the existing mortgage and a reasonable attorney's fee, the proceeds of sale shall be divided as follows:
 (a) The first Eight Thousand ($8,000.00) Dollars shall be the plaintiff's.
 (b) The remaining proceeds shall be divided one half to the plaintiff and one half to the defendant.
12. Commencing December 1, 1994, the defendant shall contribute one half of the monthly mortgage payment to the plaintiff and on the first day of each month thereafter until the property at 95 Val Drive in Stratford is sold.
13. The plaintiff shall have exclusive possession and occupancy of the premises located at 95 Val Drive, Stratford, Connecticut until such time as the property is sold. From the date of dissolution until the sale of the property, the plaintiff shall be responsible for the expenses of maintaining the property, including the monthly mortgage payment which is principal and interest (the balance of the CT Page 10046 first mortgage on the date of dissolution is approximately $130,394.00), real estate taxes, homeowner's insurance and utilities. The plaintiff shall be responsible for minor repairs, i.e., those repairs under $250 per year cumulatively. Major repairs shall be paid by each party with each party paying 50 percent thereof. Major repairs shall include those repairs costing more than $250 cumulatively each year which are reasonably necessary to maintain the home and property in good condition. Neither party shall incur any major repair without the written consent of the other party, which consent shall not be unreasonably withheld except in the case of emergency. The court shall have continuing jurisdiction to determine the issue of repairs to 95 Val Drive, Stratford, Connecticut.
14. Each party shall pay her or his own attorney's fees.
15. The plaintiff shall have restored to her her maiden name of Jacqueline Kappel, and she shall hereafter be known by such name.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE