[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, 56, whose birth name is Van Voorhies, and the defendant, 58, married on November 14, 1959 in Greenwich, Connecticut. The court has jurisdiction based on the plaintiff's continuous residence in the state for over one year prior to January 12, 1995, the filing date in court, returnable to January 24, 1995.
The plaintiff, who had finished one year of college, was employed in secretarial positions until the birth of the parties' first child in August, 1962. A second child was born in July, 1966. Thereafter, the plaintiff returned to part-time work until 1982 when she was employed by a real estate office as secretary full time. In late 1985, the parties moved to Sherman, Connecticut. The plaintiff then obtained seasonal employment, teaching skiing and working for a landscaping company and then for a farm, again as a secretary. In October, 1990, the parties moved back to Greenwich, Connecticut.
The defendant is a carpenter by trade, having been employed by his father from 1960 until the defendant elected to go into the business for himself in 1980. He remained self-employed until 1989. His business was not a success.
After their marriage the parties resided in a Glenville rental until May, 1962 when they moved to the plaintiff's family home, again as a rental. In 1966 they were able to purchase a home at 42 River Road, Cos Cob with a $10,000.00 gift from the defendant's father. In 1973 they built a house at 77 Gregory Road, North Mianus, using the proceeds from the sale of the initial home and mortgaging for the balance of $35,000.00.
In 1983 the mortgage went into foreclosure but was saved via $40,000.00 received from the defendant's father. In 1985 the house was sold. At this time, the defendant had undertaken the construction of a home in Sherman. This was sold with the proceeds used to buy a condominium unit put in the plaintiff's name and their daughter Kristina's name. The unit was lost in foreclosure in 1990.
The court concludes that when the parties retreated to the home of the defendant's parents in 1990, they had no more estate than they had when married. It was not for lack of effort. The plaintiff admitted in testimony that the defendant did the best he could at least through 1985, and that he provided the bulk of the family's income during these more than two decades. CT Page 3059
The court concludes further that the defendant's decision to move his construction business upstate ultimately strained the marriage to a point beyond repair. Not only did the general housing market in Connecticut decline shortly thereafter, a fact of common knowledge, but the defendant's efforts met with adversity. After constructing the upstate house, the defendant was obliged to have three wells dug before a sufficient water flow was found. The plaintiff characterized its disposition as a desperation sale.
The court notes that after returning to Greenwich the plaintiff stayed at her adult daughter's home three nights weekly from 1990 through 1993. For the 4 month winter season of 1991-1992 the plaintiff resided in Vermont while employed as a ski instructor. In 1990 the plaintiff was obliged to accept $4,500.00 from her mother to enable her to buy a used car. During this time the defendant was unable to sustain steady employment.
In the spring of 1992 the plaintiff found employment with a trade show company, ULLO International, Inc., as registration manager at an annual salary of $25,000.00 and medical insurance coverage for both plaintiff and defendant for $31.00 weekly.
The parties final separation occurred on Labor Day weekend, 1993. The defendant requested a divorce. The plaintiff testified that he wanted to be with another woman. On cross-examination the plaintiff acknowledged that the defendant said the marriage was over and that he told other family members the same thing on that same weekend. The court concludes that the defendant was articulating the fact that the marriage had irretrievably broken down. The plaintiff vacated the defendant's father's home on the same weekend.
The defendant acknowledged that he met a woman in July, 1992 that he began dating in October, 1993. There is no other evidence to contradict the chronology. The court does not find that the defendant's affaire de coeur was a precipitating factor in the marriage breakdown as it was in Kroop v Kroop, 186 Conn. 211, 215. On the contrary, the court concludes the parties' marriage had irretrievably broken down sometime prior to the Labor Day weekend of 1993, Venuti v. Venuti, 185 Conn. 156, and the defendant's subsequent liaison did not contribute to the breakdown.
On June 27, 1994, the defendant's father died. The parties have stipulated that the defendant received: CT Page 3060
1. Executor's fee of $40,000.00 on January 20, 1995;
2. tangible personal property valued at $2,787.50;
3. other assets and cash with a date of distribution value of $451,191.21; and
4. distribution of income totaling $17,809.33.
Thereafter, the defendant's aunt, Ruth Richter died. The parties have stipulated that the defendant has or will inherit $73,785.70 in cash, $1,620.00 of personalty, and one-half ownership in real property located on Firestone Road, East Hampton, New York valued at $45,000.00. In addition, the defendant was paid $14,356.00 in executor's commissions.
Herein lies the difficulty in fashioning an equitable judgment. The plaintiff made no contribution in the acquisition, preservation or appreciation in value of the defendant's estate.
The court finds that it was a viable marriage for 33 years. The court finds the causes for the dissolution are the defendant's repeated business failings. He tried and failed. However, such is not equated with fault. For her part, the plaintiff could not accept the final failure. Again, this does not equate with fault. The defendant (d.o.b. May 7, 1937) is 22 months older than the plaintiff (d.o.b. March 21, 1939). The plaintiff had a shoulder operation in 1992 and she complains that repetitive actions caused pain, hampering her secretarial skills. However, she has been continuously employed in her present managerial position for four years. She is otherwise in good health. The defendant is in "excellent" health. The parties are in similar stations in life. Each party has occupational skills. The plaintiff's recent employability has proven to be superior to the defendant's. Neither party has any major liabilities. The record in this case would make a determination of opportunity for future acquisition of capital assets and income by the plaintiff purely speculative. The defendant has been presented with the opportunity to increase his capital assets and thereby enhance his income. To date, it has not been clear he will nor can the court conclude he will.
The plaintiff's needs are to be addressed. She was and is to be treated as a spouse who worked diligently both in and out of the home during the marriage. CT Page 3061
The defendant urges me to view it as an alimony case with a terminal date of March 21, 2004, her 65th birthday and that the defendant be allowed to retain his assets.
Since inheriting his assets, the defendant has purchased a lakefront farm located in North Hero, Vermont. He created a corporation, McHolm, Inc., which holds title to the property. He is the sole stockholder. He values this asset's equity at $215,000.00. He is in the process of subdividing the land with 9 lots approved, with three lots ready for sale, two of which are for sale at $59,000.00 and $62,000.00. Each is two acres in size. The entire farm comprises 200 acres. He has spent $125,000.00 in improving the farm house. The court concludes his assessment of value to be overly modest. There was a restraining of assets order obtained. Notice to the defendant was questioned. The court sees no need to address it further in light of its decision.
He also holds title to Lot A, Montauk, New York which he values at $110,000.00 and 50% interest in Lot B, Montauk which he values at $45,000.00. He owns a 1995 Ford F-250 truck free of lien valued at $30,000.00 and farm equipment valued at $43,000.00 He has no dependable income. The court finds that a $1.00 per year alimony order is appropriate.
The plaintiff's needs greatly exceed her net disposable income, all as itemized on her financial affidavit. The court finds that an appropriate way of assuring the plaintiff of some security in the future and to allow defendant to meet his continuing duty to support the plaintiff is to order lump sum alimony, nontaxable to the plaintiff and not tax deductible by the defendant, Dubicki v. Dubicki, 186 Conn. 709, 714, footnote #2.
Having reviewed the evidence in light of § 46b-81 and § 46b-82, C.G.S., the court enters judgment dissolving the parties' marriage on the ground of irretrievable breakdown and enters the following orders as part of the judgment.
1. The defendant is ordered to convey Lot A, Montauk, New York, free of lien and with taxes paid to date of transfer, to the plaintiff. The defendant is ordered to pay title insurance company charges and the premium for an owner's title policy in the plaintiff's name. The transfer shall be completed with due diligence. CT Page 3062
2. The defendant shall pay to the plaintiff the sum of $15,000.00 from the proceeds of the first lot to be sold from the North Hero, Vermont subdivision as an allowance to prosecute to allow plaintiff to defray her legal expenses. If no sale occurs before September 1, 1996, the sum shall be unconditionally due as of October 1, 1996.
3. The defendant is ordered to pay $1.00 per year to the plaintiff as periodic alimony until the death of either party, the plaintiff's remarriage, or further court order.
4. The parties shall otherwise retain their respective assets as now owned and be responsible for their respective debts as now owed.
Counsel for the plaintiff is directed to prepare the judgment file and counsel for the defendant is directed to prepare all documents and to take all necessary steps to complete order #1 supra.
HARRIGAN, J.