[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] SUPPLEMENTAL MEMORANDUM OF DECISION
On November 13, 1998, this court rendered a memorandum of decision in the above-captioned matter dissolving the marriage of the parties on the ground of irretrievable breakdown.
The court reserved decision as to orders concerning child custody, support, alimony, division of assets and other miscellaneous orders.
The court has taken into consideration the evidence and testimony elicited at the time of trial as well as the provisions of Sections 46b-58, 46b-81, 46b-82 and other statutory provisions of the General Statutes in arriving at the findings and orders which follow. CT Page 6936
As previously found in the aforementioned memorandum of decision, the parties were married at Watertown, Connecticut on June 5, 1982 and both resided in this state for at least one year before the commencement of this action.
There are two minor children issue of the marriage, namely, James William Monroe, Jr. born February 19, 1986 and Alison Ruth Monroe, born September 4, 1988.
At the time of trial the defendant-husband was age 46 and in reasonable good health. He is retired from the Connecticut State Police after twenty years of service. He enjoys the benefits of a hazardous duty retirement pension which is mentioned in detail herein below. He started a "second career" in 1992 or 1993 when he obtained a teacher's certificate. He subsequently testified that his certificate is not as lucrative as one might suspect and that despite sending out numerous job applications, the only place he believes he can find full time employment as a teacher is "in China."
The plaintiff was 41 years old at the time of trial and she testified that her physical heath was "generally good" but that her emotional heath was not as good. She testified that she suffered from anxiety and had taken medication for that condition since at least September 1996.
She obtained an associate's degree as a dental hygienist, but that she had not pursued that career since 1977. Since 1979 the plaintiff had been employed in several capacities by Keeler 
Long in Watertown. She had family ties to that business, but her employment there ended when that business was sold. During her employ her rate of compensation grew steadily and it appears that her salary was artificially high due to the familial management of the business. Her pay as an administrative assistant went from $25,353.00 in 1992 to $29,125.00 in 1994 and her W-2 for 1995 reports $117,180.00 (Ptf. Ex.D through G). In 1997 the plaintiff reported $32,527.00 in income (Plt. Ex.H). At the time of trial the plaintiff testified that she expected to receive unemployment compensation benefits in the approximate gross amount of $350.00 per week. After legitimate withholdings that amount would be approximately $250.00 per week net income.
The testimony permits a finding that the plaintiff is the owner of considerable funds which she obtained both as extremely CT Page 6937 generous gifts from her father or from lucrative stock options all associated with the family business, Keeler Long. Her financial affidavit values that property at over $430,000.00. Each of the parties offered testimony as to what part, if any, those assets should have in the financial orders in this case. The plaintiff maintains that those assets are not marital assets under Connecticut case law. She cites Dubicki vs. Dubicki,186 Conn. 709, 718 (1982) as her authority. The court agrees with the plaintiff on that issue.
The defendant does not seek to share in those assets, however he argued that in determining the financial needs of the plaintiff, the court must consider the value of those assets to the plaintiff especially in the determination by the court of what might constitute a fair and appropriate alimony award and also an equitable division of assets which are indeed marital assets. As for the role those funds should play in determining alimony, the court notes that Sec. 46b-82 of the general statutes provides, in relevant part, that in determining appropriate alimony, the court must consider "the estate and needs of each of the parties (emphasis added). The plaintiff has an estate which is concededly her own estate. Although it may not properly be apportioned between the parties, it does have a bearing on what her financial needs are and will be in the future.
Another appreciable asset in this case is the defendant's Connecticut State Police pension. The evidence at permits a finding that the defendant currently receives approximately $25,000.00 in pension benefits (Ptf. Ex. L). That income is reflected as $528.60 in gross weekly income on his financial affidavit.
There was considerable evidence offered to permit the court to find that the present value (as of the date of trial) of that pension is approximately $490,000 and the marital portion of that pension is approximately $410,000.00. The plaintiff has petitioned the court to award her an interest in that pension.
The court finds that the other substantial asset of the parties is the equity which they enjoy in the marital residence. The was competent evidence to permit the court to find that the home, as of October 1997, had a fair market value of approximately $252,000.00 (Dft.Ex.1) and there is no evidence before the court that said value had depreciated or appreciated at the time of trial. CT Page 6938
In conclusion, the court finds that neither the plaintiff nor the defendant are naive when it comes to what they own, both individually and collectively. Both of them have been less than credible when it comes to the causes of the breakdown and when discussing their financial worth. The defendant maintains that estimating the price of lawn jobs by Grasshopper lawn service constitutes working up to his full income potential.
In her closing testimony, when asked if she expected to receive a "1099" in relation to her rather substantial banking and investment portfolio, the plaintiff responded "What is a 1099?". That testimony and other offerings regarding the defendant's primary responsibility for the erosion of the parties' marriage caused the court to question the credibility of the plaintiffs testimony in a number of matters.
The parties both testified that their marriage, once solid and secure, had gradually become a battleground, on both the emotional and physical levels. While there was much cumulative evidence offered by the plaintiff to establish what a boorish and unfriendly person he had become to friends and family, the court finds that there was, for the most part, enough credit or blame for both parties to share equally in regard to the irretrievable breakdown of this marriage.
The plaintiff has moved the court to consider the earning capacity of the defendant in its determination of his financial responsibilities. There was sufficient evidence offered by both sides to establish that the defendant had plugged away and managed to obtain an undergraduate degree and a teacher's certificate. He reported income during the marriage from a number of school districts. While not necessarily top dollar, that income permits the court to find that he has an earning capacity which exceeds the income he reported as an estimate for a lawn service company (approximately $12,250.00 per year as net income) and he ended up with that earning capacity, in great part, as a result of the sacrifices and support of the plaintiff during the course of the marriage.
While the defendant reported his average net weekly income to be $235.67 (from weekly employment) at the time of trial, the court finds that a more accurate figure, based on his skills, degrees and experience in education is at least $280.00 per week, even as a part time or substitute teacher and the court further CT Page 6939 finds that the defendant has failed to exploit that earning capacity in order to avoid meeting his financial responsibility to his family. When combined with his other net weekly income as reported n his financial affidavit, the defendant's total net weekly income is approximately $675.00 per week.
When totaled, the parties' combined net weekly income is found to be approximately $925.00 per week. The child support guideline weekly obligation for two children in that case is $311.00 with the defendant's proportionate share being approximately 73% or $225.00.
ORDERS
I. CUSTODY AND VISITATION
The parties shall have joint legal custody of their two minor children. The children's primary residence shall be that of the plaintiff-mother and the defendant-father shall have reasonable and liberal access to the children.
II. CHILD SUPPORT
The defendant shall pay to the plaintiff the sum of $112.50 per week for the support of each of the two minor children for a total weekly order of $225.00 The court finds that said order is consistent with the child support guidelines and is based upon the combined net weekly income of the parties at the time of trial as more specifically found herein above.
The defendant shall maintain medical and dental insurance for the benefit of the two minor children as such insurance is available to him through his employment. The parties shall each be responsible for one-half of any uninsured or unreimbursed necessary medical and dental expenses incurred for the benefit of the minor children.
III. PERIODIC ALIMONY
The defendant shall pay to the plaintiff the sum of $65.00 per week as periodic alimony. That obligation shall continue until the earliest of the following events:
1. The death of either party. CT Page 6940
2. The remarriage of the plaintiff.
3. Cohabitation by the plaintiff, as that term is defined by statute.
4. September 4, 2006.
IV. BY WAY OF PROPERTY DISTRIBUTION
A. REAL PROPERTY
1. The defendant shall transfer all of his right, title and interest in and to the family home located at 219 Highmeadow Road, Watertown, Connecticut, to the plaintiff. The plaintiff shall be responsible for all financial obligations associated with said property and shall hold the defendant harmless from the therefrom.
2. In consideration for such transfer, the plaintiff shall pay to the defendant the sum of $75,000.00, payable as follows: $25,000.00 within 90 days of the date of this judgment; $25,000.00 on June 11, 2000; and $25,000.00 on June 11, 2001. No interest shall accrue on this obligation if the payments are timely made.
B. PERSONAL PROPERTY
Except as otherwise provided herein, the parties shall each retain all of the personal property listed on their respective financial affidavits offered at the time of trial and each shall be solely responsible for the financial obligations associated with such property and shall hold the other harmless thereon.
1. HOUSEHOLD CONTENTS AND FURNISHINGS
The parties shall share equally the contents and furnishings of the marital residence. If they are unable to agree as to such distribution, the matter shall be referred to the Family Relations office of the Waterbury Superior Court for medication and for further court orders if necessary.
2. PENSION
The defendant shall transfer and assign to the plaintiff a twenty (20%) percent interest in and to his Connecticut State CT Page 6941 Police pension in a manner which vests in the plaintiff survivorship benefits to said pension should the defendant predecease her.
V. MISCELLANEOUS ORDERS
1. MEDICAL INSURANCE
The defendant shall cooperate with the plaintiff's efforts to obtain medical insurance benefits which may currently be available to the defendant through the State of Connecticut or any other employer. The plaintiff shall be responsible for the cost of any such medical insurance.
2. LIFE INSURANCE
The defendant shall maintain a policy of insurance on his life in an amount of $100,000.00 and shall name each of the two minor children as the equal and irrevocable beneficiaries of such policy for so long as each of them is a minor. The defendant may maintain a term policy to comply with this order.
3. DEBTS
Except as otherwise expressly ordered herein, each of the parties shall be solely responsible for the debts appearing on their respective financial affidavits offered at trial and each shall hold the other harmless thereon.
4. TAXES
(a) The defendant shall be responsible for and shall hold the plaintiff harmless from any tax, penalties, interest, claims, deficiencies or the like pertaining to joint income tax returns filed by the parties attributable to his income or deductions, and the plaintiff shall likewise be responsible and hold the defendant harmless with respect to her income or deductions.
(b) The plaintiff shall have the right to claim the minor child Alison as an exemption on her federal income tax returns and the defendant shall have the right to claim the minor child William on his tax returns.
By the Court, CT Page 6942
Joseph W. Doherty, Judge