[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated October 6, 1998, the plaintiff wife, Elaine M. Williams commenced this action seeking a dissolution of marriage on the grounds of irretrievable breakdown, custody of the minor children, support, alimony, equitable distribution of debts and personal property, counsel fees and other relief. The defendant, Kevin T. Williams, appeared through counsel. The State of Connecticut also appeared through appearance filed by attorney general of the State of Connecticut. The defendant answered said complaint and filed a counterclaim seeking dissolution of marriage and other relief on November 2, 1998. Robert Lazlow was appointed counsel for the minor children by Court Order dated January 6, 1999. Plaintiff amended her complaint to seek a legal separation in lieu of a dissolution of marriage by request dated March 2, 1999. CT Page 15768
All parties appeared with counsel (except the assistant attorney general of the State of Connecticut) on October 18, 1999, November 9, 1999, November 10, 1999 and November 11, 1999 and presented testimony and exhibits. The Court after hearing the testimony and reviewing the exhibits makes the following findings of fact. The plaintiff wife (whose maiden name was Elaine Bryant) married the defendant on November 25, 1989 in Torrance, California. The plaintiff has resided in this state for one year next preceding the date of filing of this complaint. All statutory stays have expired. The parties have three minor children all of whom are lawful issue of the marriage of the parties: Jasmyne Williams born April 19, 1990, Megan Williams born March 14, 1992 and Devan-Scott Williams born July 23, 1994. No other minor child or children have been born to the plaintiff wife since the date of the marriage. The Court further finds that the State of Connecticut is or has contributed to the support of the parties and/or their children.
The plaintiff wife is 33 years old and a high school graduate. She was born in Boston, Massachusetts, but was raised in Connecticut and California. She moved to California when she was 16 years old in 1982. Prior to her marriage she was engaged in retail work and childcare. In 1989 prior to her marriage she was a teacher's aide earning between $5.25 and $5.50 per hour and a campus supervisor making $7.10 an hour. During the initial period of the marriage while living in California, the plaintiff did not work. In 1994, the plaintiff left with the children and moved to Middletown, Connecticut. The plaintiff applied for and received state and AFDC assistance from October, 1994 until December, 1995 when the parties reconciled. The children received medical care assistance through Title XIX and food stamps through March of 1996.
The plaintiff resumed her employment by starting a balloon vending business which did not prove successful. In October of 1997 the plaintiff was employed as a substitute lunch aide on call at the Enfield Public School System from October, 1997 to December, 1997. Commencing January 12, 1998 she was employed as a full-time custodian at the Suffield Academy making approximately $9.27 per hour with a raise to $9.57 an hour in May of 1998. She worked at the Suffield Academy from May, 1998 through September, 1998, when she again applied for and received state assistance and AFDC. She further worked as a counselor at Camp Shiver from July, 1999 through September, 1999. She also assisted her sister in employment at Stratford Associates in the summer of 1999 CT Page 15769 making $9.00 per hour on a part-time basis. The wife presently is not employed. The Court further finds that the wife does not have the ability to obtain any skilled work in the job market due to her lack of education and training. She presently suffers from physical ailments and psychological conditions reflected in the testimony of the parties and the Exhibits. (Plaintiff's Exhibits 3, 4, 5). She has been diagnosed with fibromyalgia multifocal synovitis and sciatica and further complains of other undocumented ailments.
The husband is 35 years old and a high school graduate who was born in Torrance, California. Prior to the marriage he worked as an assistant manager of a building material store. In October of 1993, he opened his own window cleaning and janitorial service business which he operated until he moved to Connecticut in November of 1994. After his move to Connecticut the defendant started a cleaning service business. He has not filed his tax returns for 1997 and 1998 receiving an extension for both returns from the IRS. The defendant makes approximately $17,000 per year as reflected on his financial affidavit dated October 14, 1999 and filed with the Court.
The parties met at a singles' night at a hotel in California on August 1, 1989. Their courtship in California lasted for a period of one week when the plaintiff returned to Connecticut. The parties continued their relationship by way of long-distance telephone calls resulting in the plaintiff's return to California and marriage to the defendant on November 25, 1989. At the time of the marriage, the plaintiff was pregnant with their first child Jasmyne Williams who was born on April 19, 1990. The other two minor children, Megan Williams and Devan-Scott Williams were both born on March 14, 1992 and July 23, 1994, respectively.
The parties lived in various residences in California from the date of their marriage until September, 1994, when the plaintiff returned to Connecticut with the three minor children. The marriage was fraught with problems from its inception. The plaintiff claimed that the defendant refused to permit her to seek employment during the marriage. She further claimed that the defendant did not make sufficient net funds from his job as assistant manager of a building materials store and later from his own business as a cleaning and janitorial service, resulting in insufficient monies for food, clothing, medical care, etc., for her and the minor children. The plaintiff also claims that the defendant emotionally abused her calling her various names CT Page 15770 during their residence together with the State of California. The defendant, on the other hand, claims that he did not refuse her the opportunity to obtain employment. He stated that he asked her to assist him with the cleaning jobs he had obtained in his new business but that the plaintiff refused because her health prohibited her from doing the work. He further denied any emotional abuse of the wife and contended that he provided for the family as best he could under the circumstances then and there existing while the family lived in California. Defendant also claimed that he assisted in the care of the children by getting up at 5:00 a.m. in the morning and providing breakfast to the children before his first job. He also would return for lunch to assist in feeding the children. He denied the wife's claim of inadequate food in that the family had income from his business and food stamps to feed the children. As to medical care concerning the children, the family had the benefit of state medical care while residing in California. He relied upon the plaintiff to follow through with the medical and dental needs of the children, which were not met, prior to the wife's removal of the children to Connecticut.
As to what really happened between the parties and their family in California from 1989 to 1994, the Court is left with the task of determining which parties oral testimony is the most credible. After hearing the testimony of the parties, the Court concludes that the defendant's story is more credible as to what happened while the parties lived together with their children in California. The Court further finds that the lack of attentiveness to the children's medical, physical and dental needs was a result of the parties lack of communication and the mother's inability to meet the needs of herself and her family on a daily basis. The Court finds it also more credible that the plaintiff did not attempt to assist her husband at his business and/or seek outside employment in the State of California due to her physical and emotional condition and the need to raise three children while her husband worked as an assistant manager of a building material store and later commencing, October of 1993, at a new business endeavor. The Trial Court is the sole arbiter as to the credibility of the witnesses. Christine v. Eager,129 Conn. 62, (1942).
In September of 1994, the plaintiff left the marital home with the children and moved to Connecticut without prior notification to the defendant. The plaintiff resided in Connecticut in shelters in Middletown and later in an apartment CT Page 15771 with her mother, Mrs. Gloria Merritt. The defendant moved to Connecticut in November of 1994 and did not see his children until December of 1994. He saw the children approximately five times during the first year while he resided in Connecticut separate and apart from his family. The defendant was concerned about the physical well-being of his children noticing that their teeth were rotting and that they were not receiving adequate medical care inoculations, etc. The defendant made a complaint with DCF in September of 1994 concerning the care of the children when the mother moved to Connecticut with the children. The DCF further had an anonymous complaint in November of 1994 with both complaints not substantiated. More complaints were made in November, 1995 which were substantiated resulting in a finding of medical and dental neglect. The parties reconciled in November of 1996 and resided together in Windsor Locks, Connecticut. They separated again in May of 1998. In October of 1998, the plaintiff was evicted from her home on Park Avenue in Windsor Locks, Connecticut. The three minor children have resided with the defendant father since October, 1998.
The plaintiff is presently unemployed and resides with her mother, Gloria Merritt, in a three bedroom apartment. While visiting, the children share one bedroom each having a single bed. The plaintiff occupies another bedroom and the plaintiff's mother occupies the third bedroom. The maternal grandmother is collecting Social Security and SSI benefits. The plaintiff and her mother are deficient in the payment of rent and are subject to a potential summary process eviction action.
The defendant lives in a three bedroom apartment with the girls sharing one bedroom, Devan-Scott occupying another bedroom and the father occupying the third bedroom. The parties, as of the time of trial, were operating under a joint legal custody arrangement with primary residence with the father subject to visitation in favor of the plaintiff pursuant to pendente lite order of January 6, 1999.
The plaintiff mother claims that since her removal to the State of Connecticut with the children, she has been the subject of many physical ailments resulting in surgeries and a physical problem (see plaintiff's exhibits 3, 4, 5). The plaintiff is also suffering from psychological problems which she relates to a diagnosed condition of depression. The plaintiff has further been examined by medical professionals and diagnosed with a psychological ailment requiring prescriptions for said condition. CT Page 15772 The plaintiff has refused to follow medical advise and has further refused to continue taking medication as described for her psychological condition by her physicians.
The plaintiff also acknowledges the DCF referrals and investigations for alleged medical and dental neglect of the minor children. The plaintiff had failed to follow through on dental and medical inoculations for the minor children while the children were in her sole care and custody. The record further clearly reflects that while the children were in the care and custody of the defendant he followed through with dental care and medical care required to meet the children's needs.
The plaintiff submitted testimony from educators and school nurse at the Eli Whitney School to bolster her claim for custody of the minor children. The testimony was favorable to the plaintiff but related to the period of time prior to the transfer of physical residence to the defendant beginning October of 1998. The family relations officer testified that in her opinion the primary residence of the minor children should be with the father in that he has followed through with the medical, emotional and physical needs of the children. (Defendant's Exhibit A). The record also reflects that while the children have been in the care and custody of their father, they have gone to school on a regular basis and are performing satisfactorily.
After hearing the testimony of the parties and reviewing the exhibits, the Court is of the opinion that it is in the best interest of the children for their daily and routine psychological, medical, physical and educational needs, that they be maintained in the father's home with the mother visiting on a regular basis. The father is the only parent enjoying income from an occupation. The mother is presently unemployed due to her emotional and physical maladies which, taken together prohibit her from obtaining substantial and gainful employment at this time (Plaintiff's Exhibit 3). The plaintiff will probably not have an apartment available to meet the needs of the children on a daily basis due to her precarious financial condition and her lack of employment.
The Court, after reviewing the testimony exhibits and demeanor of the parties, concludes that both love their minor children and want to have the children cared for and maintained in the best environment possible considering their limited assets and income. The Court concludes that the defendant is clearly the CT Page 15773 preferred primary caretaker for all three minor children at this time. The Court has considered the causes of the breakdown of the relationship, the plaintiff's inability to care for her children's emotional and physical well-being and the parties limited resources in its conclusion that the children should reside with the father. It is important to note that the children have been subjected to eight different residences from 1994 to 1998 and five different residences from 1998 to present. The Court must bring some stability to the lives of these children. The Court, after hearing oral argument of the parties and the position of the counsel for the minor child, concludes that joint legal custody with primary residence with the father and visitation to the mother, is an appropriate custody order with the father having the final say after discussion between the parties as to major decisions of non-emergency medical care, health, education, welfare and religion of the minor children. Conn. Gen. Statute See 46b-56, Dubicki v. Dubicki, 186 Conn. 709
(1982).
The Court has considered all of the statutory factors concerning custody and visitation set out in Connecticut General Statutes §§ 46b-56, 46b-56a, 46b-59. The Court has considered all of the factors in Connecticut General Statutes §§ 46b-81,46b-82 and 46b-83 and other pertinent statutes, tax implications, earnings and earning capacity differential, causes for the breakdown of the marriage and the consequences of financial wards set forth below. The Court, with jurisdiction in this matter, finds that the facts set out in the complaint are proven true. Judgement shall enter dissolving the marriage of the parties on the grounds of irretrievable breakdown. It is further ordered that:
1. Custody. The parties shall have joint legal custody of their three minor children. Primary residence of the three minor children shall be with the father. The mother shall have specific rights of visitation as follows:
a. The plaintiff shall have visitation with the three minor children on alternating weekends from Friday at 4:00 p. m. until Sunday at 5:00 p. m. The plaintiff shall pick up and drop off the minor children at the defendant's residence.
b. The plaintiff shall also have visitation with the minor children every Wednesday from 4:00 p. m. until Thursday morning. During the school year the children are to be dropped CT Page 15774 off at school by the plaintiff and during the summer on Thursdays, when the children are not in school, they shall be dropped off at father's residence at 8:30 a.m. by the plaintiff.
c. The plaintiff shall also have additional visitation with the children: alternating federal/state holidays, one-half of winter and spring vacations, two full weeks in the summer, and the parties shall also alternate the weekend of March 11-12 (Circuit Assembly religious weekend) and the weekend of the District Convention religious weekend in early summer, with the plaintiff having visitation with the children commencing the March 11-12, 2000 circuit assembly religious weekend.
d. The parties shall confer with each other concerning nonemergency medical care, religion, education, health, safety and general welfare of the children. If the parties cannot agree, the decision of the defendant father shall be final.
e. Neither parent shall speak disparagingly of the other during their interaction with, or in the presence of, the minor children.
f. Each party shall be entitled to complete, detailed information from any pediatrician, general physician, dentist, consultant or specialist attending the children for any reason whatsoever and to be furnished with copies of any reports given by the latter or any of them to the other parent. The parties shall inform one another in the event of any illness, accident or other circumstance seriously affecting the health or welfare of any of the minor children.
g. The parent with whom the child is staying at any particular time shall take the responsibility for meeting medical and dental emergencies, and in the event of an emergency the permission of both parents shall not be necessary, provided that the parent having the child at the time of such emergency shall notify the other parent as immediately as is reasonably possible. Both parents shall provide any caretaker of the child, including, but not limited to babysitters, school and camp personnel with the telephone numbers of both parents, to be used in case of an emergency.
h. Each party shall be entitled to complete, detailed information from any teacher or school giving instructions to the child, or which the child may attend, and to be furnished with CT Page 15775 copies of all reports given by them to the other parent.
i. Each parent shall have the right to speak with the child by phone on a reasonable basis on those days when he/she does not enjoy parenting time with the child. Each parent shall keep the other apprized of their work and home telephone numbers at all times.
j. Neither party shall relocate the child's home without providing the other with sixty (60) days written notice to the other. Neither parent shall relocate the child's permanent residence from the State of Connecticut without the express written consent of the other parent, or order of the court.
k. The mother shall have no overnight visitation with the minor children which shall require the daughters and son to sleep in the same bedroom.
2. Minor Children Counseling. All three minor children are to continue with counseling with Judith Lavinsky. Said counseling shall continue as currently scheduled until such time as Mrs. Lavinsky notifies both parents in writing that counseling shall be modified and/or terminated. Any change in the counseling schedule for any of the children shall take into consideration the recommendation of Judith Lavinsky or further order of the Court.
3. Parent Aid Services. Both the plaintiff and the defendant are to continue and follow through with parent aid services. Parent aid services shall continue for each parent until the parent aid organization recommends in writing that said services shall be modified and/or terminated.
4. Supervision of Minor Children. While the minor children are not in the presence of the plaintiff or defendant, they shall not be left alone under the supervision of the maternal grandmother, Gloria Merritt. The parties shall be permitted to have the minor children supervised by unrelated adults pursuant to the following procedure. Each party shall designate two unrelated adults for childcare supervision. The other party shall meet with said unrelated adults and agree in writing as to his or her suitability to care for the minor children. Said adults shall be utilized for the care and supervision of the children while they are not in the presence of either party. Said minor children may also be in the care and supervision of other non-related CT Page 15776 adults (with the exclusion of the maternal grandmother, Gloria Merritt) for emergency circumstances in the future, if any.
5. Child Support. The plaintiff shall pay no child support to the defendant until further order of the Court due to Court's finding that the defendant presently has no income and/or earning capacity at the present time based on her physical and psychological condition. The plaintiff is ordered to contact the defendant within 24 hours of obtaining part-time or full-time employment including the compensation and benefits package (if any).
6. Health Insurance. The defendant is ordered to maintain health insurance as available from any future place of employment. During any time or times that the children are not covered by health insurance provided through defendant's future place of employment. The defendant and the plaintiff are further ordered to cooperate and file any and all documents necessary to insure the children for medical care and treatment under the Connecticut Husky Plan. The defendant father shall be required to pay all unreimbursed and uncovered health care expenses for the minor children.
7. Alimony. Plaintiff shall pay no alimony to the defendant. The defendant shall pay $1.00 per year alimony to the plaintiff until the first of the occurrence of the following events (1) remarriage of plaintiff; or (2) cohabitation with an unrelated male as defined in Conn. General Statutes § 46b-86 (b); (3) December 1, 2007. Said alimony is modifiable as to the amount, but is non-modifiable as to term.
8. Child Support Arrearage. The plaintiff is found to be in arrears in child support in the amount of $364.00. No present order is made on payment of said arrearage.
9. Liabilities and Bill Owed to Enfield Pediatrics. The Court further orders the defendant to pay the $271.00 due to the Enfield Pediatrics and hold the plaintiff harmless from any liability thereon. Each party shall pay the liabilities set forth in their financial affidavit with neither party required to hold the other harmless from liability thereon.
10. Tax Exemptions. The defendant shall be permitted to take all allowable tax exemptions for all three minor children for IRS and state income tax return purposes. CT Page 15777
11. Bank Accounts. The plaintiff shall have all right, title, interest in and to her bank account, her checking and savings account at the First National Bank of Suffield. The defendant shall have all right, title and interest in and to his bank account at the Enfield Savings Loan, fishing equipment and 1986 Buick and 1988 Dodge automobiles.
Devine, J.