[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By complaint dated March 2, 1998 the plaintiff wife, Cheryl Baumgartel commenced this action seeking a dissolution of marriage on the ground of irretrievable breakdown, custody, child support, alimony, property distribution and other relief. On October 21, 1998, Attorney Kathleen Murrett was appointed guardian ad litem for the minor child, Peter George Baumgartel born August 8, 1993. The Court further appointed Leo Diana to represent the interest of the minor child as attorney for the minor child. The parties and counsel appeared before this Court on June 14, 15 and 17, 1999 and presented oral testimony and exhibits. The Court, after hearing the evidence and reviewing the exhibits, finds the following facts.
The wife whose maiden name was Cheryl Melkonian married the defendant husband in Avon, Connecticut on April 3, 1993. The plaintiff has resided continuously in the State of Connecticut for one year next proceeding the date of the filing of this complaint. All statutory stays have expired and this court has jurisdiction. The parties have one minor child born to the CT Page 8983 plaintiff since the date of this marriage, who is issue of the marriage: Peter George Baumgartel born August 8, 1993. The Court further finds that no other minor child or children have been born to the wife since the date of the marriage. The Court further finds that no state or municipal agency is contributing to the support of the parties and/or the minor child.
The plaintiff wife is 41 years of age. She was born in Bridgeport, Connecticut and graduated from Colby Cathedral High School as valedictorian of her class. She further matriculated at University of Connecticut and received a Bachelor of Science Degree in Accounting in 1979. For the last 10-1/2 years she has been employed by Grolier Incorporated in Danbury, Connecticut. She is presently assistant account manager in the corporate accounting office as supervisor of a department of five. Her financial duties include preparation of the general ledger and various corporate financial statements required by her employer who is a nationally known publication organization. She works from 8:00 in the morning until 4:45 p.m. with some flexibility available to her concerning employment while at home. Her salary for 1998 calendar year was $67,236.00. She receives medical insurance benefits, 401k plan and life insurance through her place of employment, in addition to a defined benefit contribution pension plan. She also received a $4,000.00 bonus in March of 1999 reflecting her work performance for calendar year 1998. Prior to Grolier Incorporated, she worked for the Capital Region Education Center in West Hartford, Connecticut. The plaintiff presently enjoys good health, stable employment and a fine work record but for the interruptions caused by the present dissolution of the marriage action.
The defendant husband is 54 years old and received a Bachelors of Arts Degree from the University of Connecticut in Education and a Master's Degree from Harvard University. He has been employed for the last six years at American International College in Springfield, Massachusetts in the computer department. Prior to his employment at AIC he worked as a technical consultant for Computer Systems Research and the Capital Region Education Center where he worked with the adult education program and GED preparation and tutoring. As Director of Computer Services for AIC, the defendant makes $41,184.00 per year or $792.00 per week. The defendant also is the recipient of an AIC defined benefit pension plan and an Allstate IRA. The defendant enjoys good health, but has high blood pressure, high cholesterol. He has undergone psychological counseling and CT Page 8984 therapy for depression and is presently taking medication by prescription. He is also addicted to tobacco and has sporadically used marijuana in the past.
The parties met each other in 1986, the plaintiff was 28 years old and the defendant was 41. They dated exclusively for a year when the defendant moved in to the plaintiffs residence in 1987. In the summer of 1988 the parties were engaged, parenthetically, without proposal by either party to the other. The parties had a long courtship, i.e., 5 years because both had to work out problems with their relationship. The plaintiff wanted children. The defendant was afraid to have children because of his past life. The plaintiff became pregnant which forced the parties to accelerate their marriage plans. The parties wed on April 3, 1993, with the minor child Peter George Baumgartel arriving four months later.
The Court finds that the marriage was beset by problems since its inception. The parties could not even agree on the defendant's participation in medical testing and treatment of the plaintiff during pregnancy. The plaintiff gained substantial weight from the pregnancy which she has been able to lose since the date of the child's birth. As to the intimacy of the relationship, the parties only engaged in sexual relations once after the birth of the baby. At approximately two years post-birth, the marriage of the parties finally broke down due to the parties inability to agree upon the issues important to the maturation, development and care of the minor child. The parties argued continuously trading derogatory remarks in person, in private, public or through electronic and telephonic means. The defendant found the plaintiff to be physically unattractive, controlling and basically a spouse who thought she could never be wrong. The plaintiff found the defendant to be inappropriate in his behavior concerning the care and discipline of the child. She also found him to be a loner, depressed and an abuser of cigarettes. The parties separated on December 27, 1996 after an argument and the defendant moved to Bloomfield, Connecticut.
The plaintiff and defendant have constantly fought as evidenced by the amount of pendente lite motions concerning custody and/or visitation that had been filed in the present matter. Each have claimed the other has made inappropriate remarks concerning the psychological and/or physical attributes of the other in public and private places and more importantly in front of the minor child. The Court hereby finds that although CT Page 8985 each party has obtained high grades in academic achievement, their conduct reflects a C-average in interpersonal communication skills and parental agreement regarding child rearing. The Court further finds that both the plaintiff and defendant have made disparaging remarks about the other within ear shot of the minor child based upon the testimony and telephone tapes played to the Court and made exhibits in the pending controversy.
The parties have agreed after extensive negotiation to matters of custody, physical residence/access, telephone access, transportation concerning the minor child. The parties cannot however agree on two major issues: (1) relocation of the mother from Avon, Connecticut to Watertown, Connecticut; and (2) midweek overnight visitation or access with the minor child with father or in the alternative, a shared custody arrangement between the mother and father. After hearing all of the evidence, the Court concludes that both the plaintiff and defendant love their child and want to be with their child for as much time as they can after meeting their employment requirements. The plaintiff has made arrangements with her employer to perform work at home when required to meet the needs of her son. Further, the defendant is able to rearrange his work schedule as computer director for AIC to accommodate his involvement with the minor child. The plaintiff contends that it is not in the best interest of the minor child to be with the father overnight during the school week. The defendant contends that the minor child not only thrives while he is cared for by the plaintiff, but also with him. He presently resides with a childhood friend, George Martin, in a residence owned by him in Bloomfield, Connecticut. The minor child and the defendant have separate bedrooms while he has access with the minor child. He admits and the Court further finds that the environment in which the minor child resides while in the physical possession of the defendant is degraded by the tobacco smoke resulting from the defendant and friend/landlord's use of tobacco. The plaintiff presently resides with the minor child at the marital home located at 36 Bronson Road in Avon, Connecticut. No third party lives with the plaintiff and the child.
As to the issue of overnight, midweek visitation, or shared custody, the Court has wrestled with the issue as to whether or not it is in the best interest of the minor child to reside overnight with the defendant during midweek, while school is in session and/or whether shared custody should be ordered. The plaintiff has contended that the minor child is adversely CT Page 8986 affected on the day after his present overnight midweek visitation with the defendant. She bases this testimony on her observations of the minor child after school and/or daycare and the mood and actions of the minor child while at home. The counsel for the minor child and the guardian of the minor child both agree with the position of the defendant, i.e., that the minor child benefits from the midweek overnight visitation and exposure to the care and custody of the defendant. The testimony of the independent witnesses in this case, an Avon school teacher, Carolyn Daniels and the nursery school director/teacher, Charlotte Sadowsky paint a different picture of the child's mood and behavior after overnight midweek visitation than as testified to by the plaintiff. Both the school teacher and the nursery school official found no difference in the minor child's behavior, attention span, cleanliness and/or mode of dress for the day after the overnight midweek visitation with the father.
While the Court understands and appreciates the position of the plaintiff, the Court hereby orders midweek visitation overnight with the defendant as stated below based on the evidence presented in the record, and position of the guardian ad litem and counsel for the minor child. The credibility of the witnesses and the weight given to their testimony is in the sole discretion of the trier of fact. Christie v. Eager, 129 Conn. 62, (1942). As to the claim of the defendant, re: shared custody, the Court finds that shared custody is not in the best interest of the minor child based upon the oral testimony and evidence submitted in the records by way of exhibits. While the minor child has a good relationship with both parents, the minor child has been residing with the mother on a continual basis since the date of the parties separation subject to the father's parenting access initially arranged by the parties by mutual agreement and subsequently imposed by court mandated orders. The best interest of the child dictates the minor childs primary residence shall be with the mother. Hall v. Hall, 186 Conn. 118, 123-124 (1982) andDubicki v. Dubicki, 186 Conn. 709 (1982).
The Court further finds that the plaintiff shall be permitted and authorized to relocate anywhere in the State of Connecticut in establishing a primary residence for the minor child. The defendant can arrange flexible hours at work to accommodate time and travel to exercise his rights of visitation considering his work location in Springfield, Massachusetts, residence in Bloomfield and limited travel time with the borders of the State of Connecticut. The Court has considered all of the applicable CT Page 8987 facts in Connecticut General Statutes §§ 46b-56 and 46b-56a in determining the custody and visitation orders contained herein.
As to the issues of alimony and property, orders the parties have stipulated that fault is not an issue and that further no alimony is requested by either party. The Court has considered the stipulation of the parties and all of the applicable factors in Connecticut General Statute §§ 46b-62, 46b-81, 46b-82 and46b-84 concerning counsel fees, assignment of property and debts, alimony, health insurance, child support, tax implications, earning capacity of the parties, causes for the breakdown of the marriage and consequences of the financial awards set forth below. The Court, which has jurisdiction in this matter, further finds that the facts set out in the complaint are proven true. Judgment shall enter dissolving the marriage on the grounds of irretrievable breakdown. It is further ordered that:
1. Relocation: The plaintiff shall be permitted to relocate within the State of Connecticut with the minor child, Peter George Baumgartel born August 3, 1993.
2. Custody: The parties shall share joint legal custody of the minor child, Peter George Baumgartel.
The parties shall exert every reasonable effort to maintain free access and to foster feelings of love and respect between the child and the other parent. Neither parent shall do anything which may estrange the child from the other parent, mislead the child as to the continuing role of either parent, injure the child's opinion of his mother or father nor act in such a way as to hamper the free and natural development of the child's love and respect for the other party.
It shall be the intent of the joint custodial arrangement to allow each parent to have a full and active role in providing a sound social, economic, educational, religious and moral environment for the child. To this end, both parents shall consult with each other on all non-emergency matters affecting the health, safety, welfare, religion and education and recreation of the child, before such action involving the child is taken. These matters shall include, but not be limited to, such substantial issues as educational programs, scheduling for health related matters, religious upbringing, daycare, camp, extracurricular activities and medical treatment. In the event that a conflict exists as to such major decisions which is CT Page 8988 unresolvable through mutual discussion, the parties shall resolve their differences through the use of a mediator and said mediator's decision shall be final. The cost of the mediator shall be shared equally. The parties shall mediate their disputes with Thomas Fulop or Robert Colluci.
Each of the parties agree to keep the other reasonably informed of the whereabouts of the child while he is with the mother or the father, and agrees that if either has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of said child, the father or the mother, as the case may be, will promptly notify the other. During any serious illness or injury, both parties shall have the right of reasonable access to the child in addition to the other rights provided herein.
In those instances where an emergency requires that action be taken without prior notice of either parent, and involves serious illness, injury or hospitalization, the parent shall inform the other of the action as soon as possible.
Neither parent shall coerce, threaten, harass, intimidate, discourage or in any way deny the child reasonable access to the other parent. Access shall include, but not be limited to telephoning, letters and gifts from either parent and spending time at school and/or daycare.
Each party shall be entitled to complete, detailed information from any pediatrician, physician, dentist, therapist, consultant, teacher, daycare provider, guidance counselor, or specialist attending the child for any reason whatsoever and to be furnished with copies of any reports given by any of the aforementioned to the other parent.
Each party shall immediately notify the other of any school, athletic, medical, extracurricular or other event involving the child. It is the intent of the father and mother that such notice will facilitate the attendance by both parents at any such event involving the child, no matter who the child may be residing with at that time. In the event that either parent cannot attend a school conference, doctor's appointment or similar event, the attending parent shall promptly provide the other the results of said conference along with any reports associated therewith. Both parents shall also promptly provide each other copies of any school, field trip, disciplinary or other school related notices CT Page 8989 for the minor child.
If either parent is unavailable to be with George for a period exceeding two (2) hours, the other parent shall be given the right of first refusal to care for George.
Neither party shall permanently remove the minor child from the State of Connecticut absent mutual agreement or further order of the Court. Any party seeking to permanently remove the minor child outside of the State of Connecticut shall give the other party at least ninety (90) days advance notice in writing.
3. Physical Residence/Access: The primary residence of the minor child shall be with the plaintiff mother. The defendant father shall have specific rights of visitation as follows:
a. Alternate weekends from Thursday afternoon after school or daycare until Monday morning, drop off at school or plaintiff mother's residence.
b. Alternate weekdays (i.e., on weeks that father does not have Thursday through Monday visitation) he shall have the child from Thursday afternoon after school or day care through Friday morning with drop off at school or plaintiff mother's residence.
c. In the event that either party is away from the minor child for more than two hours, the other party shall be the child care provider of choice and shall be notified prior to seeking assistance from a third party.
d. Holidays and child's birthday. Holidays and the minor child's birthday shall be divided as follows:
(1) Thanksgiving day and Easter day to alternate between the plaintiff (odd years) and the defendant (even years);
(2) Christmas Eve with the defendant until 9:00 p.m. even years, except to 10:00 a.m. on Christmas day odd years;
(3) Every Christmas day with Plaintiff even years, except for 10:00 a.m. in odd years;
(4) New Years Eve and New Years day alternate between the plaintiff (odd years) and the defendant (even years); CT Page 8990
(5) Minor child's birthday to be shared by the parties with preference given to the minor child's choice of reasonable party/activity and the reasonable cost of such party/activity equally divided by the parties;
(6) Mother's day with the plaintiff and father's day with defendant:
(7) Plaintiff's birthday with plaintiff and defendant's birthday with defendant;
(8) School vacations. School vacation periods shall be equally divided between the parties per vacation. Said vacations include Christmas, Winter and/or Spring week. Each party shall be entitled to three weeks Summer vacation (Sunday 5:00 p.m. until Sunday 5:00 p.m. is equal to one week), no more of two of which shall be taken consecutively. Notice of Summer vacation plans must be exchanged in writing by April 1 of each year. In the event of a conflict, the plaintiff's preference shall be prevail in odd years and the defendant's preference shall prevail in even years. In calendar year 1999, the father shall have George from July 12 until July 18 and August 9 until August 15.
4. Telephone Access: Each party shall be appraised of where the minor child is at all times and be provided with the telephone number and address where he or she may be reached which shall not be utilized in a fashion to interrupt with the privacy of the other. In the event that one parent is on vacation with the minor child, the other parent will be provided with a telephone number and address where the minor child can be reached and each shall be entitled to reasonable telephone contact with the minor child and the minor child shall be entitled to unlimited telephone access to either parent with said cost for long distance phone calls to be borne by the parent who receives the phone call.
5. Transportation: The defendant shall be responsible for all transportation concerning his visitation access with the minor child.
6. Child Support: The defendant shall pay to the plaintiff the sum of $100.00 per week child support which shall be payable personal and to immediate wage withholding order. The child CT Page 8991 support guidelines provide for child support in the amount of $123.00 per week as stipulated to by the parties. The Court finds a deviation from the amount of child support down to $100.00 based upon the expenses to be incurred by the defendant in exercising his rights of visitations pursuant to the terms of this judgment. Further the parties shall alternate taking the child as an exemption for Internal Revenue Services and state income tax purposes for all future years that the child is a legal dependant. The plaintiff shall take the minor child for an exemption on odd years with the defendant to take the minor child as an exemption on even years. Both parties shall execute any documents necessary to allow either party to declare the minor child as a dependent for exemption purposes for both federal and/or state income tax purposes.
7. Alimony: No alimony is awarded to either party.
8. Medical Insurance: Each of the parties shall maintain medical and dental insurance for the benefit of the minor child as presently available through their place of employment. The parties shall divide equally all uncovered and/or unreimbursed medical, dental and health related expenses for the minor child. Said expenses to include any expenses for medical, dental, optical, opthamalogical, psychiatric, psychological, etc., for the minor child. Further, Connecticut General Statutes § 46b-84
(e) also applies and is hereby ordered.
9. Life Insurance: The plaintiff is hereby ordered to maintain her existing life insurances available through her place of employment in the amount of $130,000.00 or any other insurance available through any future place of employment naming the minor child as beneficiary so long as he is a minor. Defendant is further ordered to maintain his life insurance policy provided at his place of employment in the amount of $82,400.00, or any other life insurance available through a future place of employment, naming the minor child as beneficiary so long as he is a minor.
10. Crisis Counseling Intervention: The parties are hereby ordered to go to and cooperate with the division of family relations family crisis counseling. The parties are also ordered to sign any documents including releases deemed necessary by the Department of Family Relations to carry out said counseling.
11. Anger Management and Substance Abuse Counseling: Both parties are ordered to engage in and cooperate with anger CT Page 8992 management counseling. Each are required to pay their own separate expense for said counseling not covered by insurance. Further both parties are ordered to sign any and all documents and releases deemed necessary and appropriate by said counselor or therapist. The defendant is further ordered to go to and cooperate with substance abuse counseling which shall include tobacco use.
12. Attorney's fees for counsel of the minor child: The Court hereby finds that the total amount of bills for services rendered by the counsel for the minor child (Attorney Leo Diana) is $6,340.00. The plaintiff and defendant have both paid $750.00. The balance of said bills shall be paid equally by the parties, i.e., $2,420.00 each. Said payment shall be made on a schedule agreed upon by counsel for the minor child. If the parties cannot agree to a payment schedule, counsel by the minor child is hereby authorized and ordered to file a motion before the court to set a court ordered payment schedule.
13. Guardian ad litem bill: The Court hereby finds that the guardian ad litem for the minor child, Kathleen A. Murrett, Esq., totals $17,025.00. The plaintiff has paid $2,250.00 to date and the defendant has paid $1,950.00 to date. There is a balance owing in the amount of $12,825.00. The plaintiff is ordered to pay a balance of $6,262.50 and the defendant is ordered to pay a balance of $6,562.50 on a payment schedule to be worked out with the guardian ad litem. Further if the parties cannot agree to a payment schedule with the guardian ad litem, the guardian ad litem is further authorized and ordered to file a motion with the court to set a payment schedule.
14. Smoking during visitation access: The Court hereby orders the defendant to refrain from smoking in the presence of the minor child, whether he is with the minor child at his residence, a public place, or automobile in which the minor child is a passenger. The defendant is further ordered to seek the cooperation of existing roommate from smoking in the residence when the minor child is with the defendant. Once the defendant moves out of the existing residence in which he resides in Bloomfield, Connecticut, he is hereby ordered to maintain the minor child in a smoke-free environment while visiting with the minor child in his residence.
15. Medical insurance and health cost for plaintiff anddefendant: The Court hereby orders that neither party shall have CT Page 8993 any financial responsibility for the other's health insurance cost and/or medical care expenses after the date of this judgment. Further, either party is ordered to cooperate and assist the other in obtaining any COBRA health insurance benefit coverage at his or her sole expense upon request of the other. Either party is also further ordered to execute any and all documents required for the other to obtain COBRA medical insurance coverage.
16. Avon, Connecticut real estate: The Court hereby orders that the parties shall sell the jointly owned marital real estate located at 36 Bronson Road, Avon, Connecticut for the purchase price of $150,000.00. The parties are further ordered to sign any and all documents and/or warrantee deeds necessary to effectuate the terms of this sale. The plaintiff will have the right to continue to reside at the marital residence and pay mortgage, taxes, insurance, routine maintenance and upkeep on a pro rated basis to the date of this sale or the date she removes herself and the minor child from the marital residence whichever shall occur first. If the plaintiff vacates the property prior to sale, the defendant shall have the right to reside in the property and shall pay the mortgage, taxes, insurance, routine maintenance and upkeep on a pro-rata basis to the date of sale. If the plaintiff vacates the property prior to sale and the defendant does not reside at the property prior to sale, each party shall share equally in the payment of the mortgage, taxes, insurance, routine maintenance and upkeep until the date of sale. The parties shall equally divide the net proceeds of said sale or equally share in any loss from the sale of said property. The net proceeds of the sale, shall be derived from the gross sale price minus the deduction for real estate commission, attorney's fees, closing costs and any pro rata adjustment concerning the expenses ordered to be paid by the plaintiff or defendant as stated herein.
If the parties cannot sell the property on the open market for $150,000, the parties shall agree in writing to a reduced sales price. If the parties cannot agree to a reduced sales price, the parties shall submit said price to a mediator named in this judgment with said mediator's decision to be final.
The plaintiff shall also be entitled to reimbursement for one-half of the plumbing repair expenses paid by the plaintiff as set out in plaintiff's Exhibit A, or $672.12. Said sum shall be paid by the defendant from his net proceeds from the sale of the real property. CT Page 8994
Each party shall be entitled to claim all the Avon, Connecticut marital real estate interest deductions for IRS and state income tax purposes for calendar year 1999 for payments made by each.
17. Waterbury and Florida Condominiums. The plaintiff shall have all right, title and interest in and to the Waterbury condominium known as 135-9 Woodglen Drive, Waterbury, Connecticut. The plaintiff shall pay and hold the defendant harmless from any liability on said mortgage, taxes and insurance on said condominium. The defendant shall have all right, title and interest in and to the Florida condominium. The defendant shall further pay and hold the plaintiff harmless from any liability on said mortgage, taxes and insurance on said condominium.
18. Deferred Compensation. The plaintiff shall have all right, title and interest in and to her Grolier Incorporated employees savings 401K plan with a present value of $38,827.00. The plaintiff shall also have all right, title and interest in and to her Grolier retirement plan in the amount of $24,544.00 present value. The wife shall transfer all of her right, title and interest in and to the tax-deferred annuity at Central Union Life the present value $11,205.00 to the defendant. The defendant shall have all right, title and interest in and to the AIC pension, present value of $24,506.00 and his Allstate IRA present value $5,173.25. The court shall retain jurisdiction to enforce the provisions of this paragraph. Both parties are ordered to execute any and all documents necessary to effectuate the transfer of Central Union life tax deferred annuity. The defendant shall pay all taxes to state and federal government upon withdrawal of said fund.
19. Life Insurance. The parties are hereby ordered to cancel their life insurance policy with Allstate Life Insurance Company. The cash value of $6,128.00 shall be shared equally by the parties upon receipt.
20. Automobiles. The plaintiff shall have all right, title and interest in and to the 1998 Nissan Altima and shall pay the loan balance on said vehicle and hold the defendant harmless from any liability thereon. The defendant shall have all right, title and interest in and to the 1991 Olds Cutlass automobile. CT Page 8995
21. Bank Accounts. The plaintiff shall have all right, title and interest in and to the bank accounts set out on her financial affidavit, namely, Connecticut State Employees Credit Union checking and savings and EastConn Federal Credit Union. The defendant shall have all right, title and interest in and to the bank accounts set out on his financial affidavit, namely, Connecticut State Employees Credit Union checking and savings, tenant deposit and Connecticut State Employees Credit Union savings account ordered as account for minor son.
22. Debts.
The plaintiff shall pay and hold the defendant harmless from all of the following liabilities: her Discover card, First USA Mastercard and ATT Universal Mastercard.
The defendant shall pay and hold the plaintiff harmless from any liability on his Discover card, Mastercard/Visa — People's Savings Bank, Capital One Visa, First USA Visa and Fleet Mastercard.
23. Counsel Fees. Each party shall pay their own counsel fees.
Devine, J.